[Civ. No. 1323. Fourth Appellate District.—April 5, 1934.]

NEW AMSTERDAM CASUALTY COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and KATHERINE STACY, Respondents.

720

W. N. Mullen for Petitioners.

Everett A. Corten for Respondents.

MARKS, J.—D. B. Moore, an elderly gentleman of the age of about eighty-four years, suffered a fracture of his hip and was confined to a hospital in the city of Tulare for a considerable time. During the early part of his confinement there he was cared for by graduate and registered trained nurses. For the latter part of his stay he was attended by Miss Katherine Stacy, who was not a graduate and registered nurse, but came within the classification of practical nurse. It was not questioned that her long experience had qualified her to perform all of the duties of a graduate and registered nurse. While at the hospital she performed these duties and received the compensation of a graduate and registered nurse.

On December 8, 1930, Mr. Moore was discharged from the hospital and returned to his home. He was not sick, but was totally disabled as a result of his injury and the

physical weaknesses of age so that he required the constant care of an attendant. He took Miss Stacy with him. She was on duty twenty hours a day, having four hours off. She lived, and took her meals at the Moore home and received about the same compensation as would have been paid to a graduate and registered nurse. During the four hours of each day when Miss Stacy was off duty, Mr. Foss took care of Mr. Moore. Mr. Foss was not shown to have possessed any of the qualifications of even a practical nurse. His services were entirely satisfactory and it was not even suggested that he was not competent to perform all the functions of his employment and to attend to all the wants and needs of Mr. Moore. During his hours on duty he performed about the same services for Mr. Moore as did Miss Stacy during the twenty hours when she was attending him.

On August 25, 1932, while performing the duties of her employment at the home of Mr. Moore, Miss Stacy fell and fractured the neck of her left femur. She was confined to a hospital for a number of weeks and was not able to work between the time of her injury and August 30, 1933. She applied for compensation and the Industrial Accident Commission awarded her $1242.85, total temporary disability from August 25, 1932, to August 15, 1933, and the further sum of $25 per week commencing August 16, 1933, to continue until the termination of her disability, or until further order of the commission. This proceeding is brought to review this award.

The petitioners urge three grounds for the annulment of the award. (1) Conceding that Mr. Moore and the insurance agents intended to cover Miss Stacy as an employee under the policy written by the New Amsterdam Casualty Company, and accepted and paid for by Mr. Moore, and that all of them believed she was so covered, such agents were not agents of the Casualty Company and therefore the New Amsterdam Casualty Company was not bound or obligated beyond the terms of its express contract. (2) That Miss Stacy was an independent contractor and not an employee of Mr. Moore, and therefore was not covered by the terms of the policy. (3) That there is no evidence in the record showing that Miss Stacy was disabled.

The insurance policy written by the New Amsterdam Casualty Company covered the "employees" of Mr. Moore,

who were defined as follows: "Two Inservants . . . one occasional in and out-servant." Those employed by and attending Mr. Moore were a housekeeper, Miss Stacy and Mr. Foss. The policy of insurance was procured by Mr. Moore through J. J. Mitchell, an insurance agent residing in the city of Tulare. Mitchell was assisted in the preparation of the application for the policy by F. R. Thompson. Mitchell was the authorized agent and Thompson the special agent of Seely and Company, insurance brokers of San Francisco. Seely and Company secured the insurance policy from agents of the New Amsterdam Casualty Company without disclosing the fact that Mr. Moore, Mitchell and Thompson all intended to include Miss Stacy within the definition of an inservant, and believed that she was so included, or that the Moore household consisted of the housekeeper, Miss Stacy and Mr. Foss. Neither Mitchell, Thompson, nor Seely and Company were agents of the New Amsterdam Casualty Company. ■ Under such circumstances the New Amsterdam Casualty Company could not be bound by the knowledge, intention or representations of those who were not its agents, and of which it had no notice. (*Solomon v. Federal Ins. Co.*, 176 Cal. 133 [167 Pac. 859].)

The petitioners maintain that Miss Stacy was acting in the capacity of a professional nurse in her care of Mr. Moore and that as such she performed " 'her usual duties with the skill which is the result of training in that profession, (and) does not come within the definition of a servant, but rather is one who renders personal service to an employer in pursuit of an independent calling' ". (*Moody v. Industrial Acc. Com.*, 204 Cal. 668 [269 Pac. 542, 60 A. L. R. 299].)

Respondents maintain that while Miss Stacy possessed knowledge and experience sufficient to qualify her to act in the capacity of a professional nurse, the evidence shows that in fact she was a companion and personal servant of Mr. Moore and as such subject to his complete direction and control. It is admitted by counsel that if she were an independent contractor the award must be annulled, but that if she were working as a servant a contrary conclusion must be reached.

Petitioners group the following facts which they maintain demonstrate that she was acting in the capacity of

a graduate registered, professional nurse and was therefore an independent contractor within the ruling in the case of *Moody* v. *Industrial Acc. Com., supra:* A training and experience equaling that possessed by a registered graduate nurse; compensation equaling that received by such a nurse; her testimony that had Mr. Moore instructed her to do something which she knew would be injurious to him and which the attending physician prohibited she would have followed the directions of the physician instead of the demands of the patient.

We can see no reason why the qualifications of Miss Stacy should be controlling in determining her status in the home of Mr. Moore. There is no reason why a professional woman could not step out of her profession and accept menial employment if she desired to do so. During the past several years men and women possessing high professional training have been compelled by the extremities of the times to leave their professions and accept any employment that would supply the necessities of life. Nor should the rate of pay be controlling. It was a matter of private contract between the two and if Mr. Moore was willing to pay Miss Stacy more than the usual wage for similar services rendered, by a less highly trained servant, it was within his province to do so without changing the nature of the employment. Miss Stacy's testimony that she would not have followed the directions of Mr. Moore should he have required her to do something which would have been detrimental to him was in answer to a question by counsel which assumed that such an occasion might have arisen. The evidence shows that Mr. Moore made no request of Miss Stacy with which she did not comply. Miss Stacy never disobeyed the directions of Mr. Moore nor did she disregard his requests. We must determine her status from what the record shows actually occurred between the two rather than what might have happened had a different state of facts presented themselves.

One of the attending physicians testified that Mr. Moore was disabled but was not sick; that anyone with ordinary intelligence, without special training as a nurse who had been shown and told what to do, could have taken care of Mr. Moore; that the services rendered by Miss Stacy were not those required of a graduate, registered nurse, but such as "any ordinary person can do . . . any ordinary house-

keeper, mother, anyone in the family can do what she did at home''. ■ The evidence describing the various services performed by Miss Stacy amply supports the opinion of the doctor and the conclusion of the Industrial Accident Commission that Miss Stacy was acting in the capacity of companion and personal servant of Mr. Moore and not as a trained professional nurse.

■ There is ample evidence in the record supporting the finding that Miss Stacy was disabled. The first hearing was held on October 26, 1932, when her testimony was taken at her bedside. She testified then concerning her fall and that her left femur had been fractured. A second hearing was held February 9, 1933, and a third on August 15, 1933. She was present and testified and the referee had an opportunity to observe her physical appearance and actions on each of these occasions. On August 31, 1933, the attending physician of Miss Stacy filed the following report with the commission:

"Miss Katherine Stacy of Tulare, California, who was injured Aug. 25–1932 has been under my care since that time, and has been unable to do any work since her accident.

"HENRY W. FOX, M. D."

■ Another reason exists why this last contention of petitioners cannot be sustained. It is made here for the first time and was not specifically urged at any of the hearings before the commission nor in the petition for rehearing. This being true, we must regard it as waived. (Sec. 64 (c), Workmen's Compensation Act; *Great Western Power Co.* v. *Industrial Acc. Com.*, 196 Cal. 593, at 600 [238 Pac. 662].)

Petitioners reply that in their petition for rehearing, and as a ground thereof, they specified "that the evidence does not justify the findings of fact" and that this should be sufficient to raise the question of the insufficiency of the evidence to support the finding of disability. An argument on the evidence was incorporated in the petition and this question was not mentioned. It was not argued in any of the hearings nor in the written arguments of counsel filed with the commission before the award was made. That sufficient proof of the disability of Miss Stacy had been offered seems to have been assumed by all parties in all proceedings had prior to filing the petition in this court

to review the award of the commission. Under such circumstances the question cannot be raised here for the first time.

Award affirmed.

Barnard, P. J., and Jennings, J., concurred.

An application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 31, 1934.