## Batsel v. Brown.

May 31, 1949.

Meredith, Iler & Logan for appellant.

T. E. Sparks for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellee, plaintiff below, sought to recover $5650 on account of personal injuries received while operating a machine in the planing mill of defendant. Of the sum named $125 was for medical and doctor's expenses, and $525 for loss of time. The injury alleged was the loss of the use of three fingers of the left hand. The testimony shows that the tips of the three fingers were cut off, and the physician testified that he amputated, apparently at the upper joints, and closed the tissue over the ends. Brown was never taken to the hospital, and from the evidence lost only a few weeks work.

Plaintiff alleged that at the time of the injury he was operating a jointer, engaged in sawing and processing rough lumber; that he was directed by defendant to operate the jointer, "which had a rapidly revolving set of blades propelled by electric current." That on September 24, 1946, he was engaged in placing rough lumber on the machine and running it through the blades, and that without fault on his part his hand was caught in the blades, with the result above stated.

He charged that the machine was in a defective condition because "necessary and proper guards were not placed on the machine, and the blades were revolving in an exposed position; that defendant had knowledge of the defective condition, or could have known so by the exercise of ordinary care, and that he had no knowledge of the condition of the machine until after the injury.

Defendant answered, denying the allegations of the petition, and affirmatively pleading that the alleged injury was solely the result of defendant's negligence.

There are other pleadings relating to the payment of more than $500 to plaintiff during the time he was disabled, and after he returned to work in the same mill as a measurer or supervisor. The points raised on appeal do not necessitate a reference to such pleadings. It appears from appellant's brief and the record that the parties were not eligible to operate under our Workmen's Compensation Law, KRS 342.001 et seq., therefore defendant was not confined to the defenses under that law.

The cause was submitted to a jury which returned this verdict: "We the jury find for plaintiff and award damage of $750 and $125 doctor's or hospital bills." On appeal the argument is that Brown assumed the risk; was negligent in the operation of the machine, and that no negligence was shown on the part of defendant, therefore he was entitled to a favorable peremptory instruction, asked at the close of plaintiff's and all testimony.

Appellee, a carpenter 55 years of age, at the time he was injured was and had been engaged in making frames for doors and windows. The machine is described by appellant as an "iron table with a roller and three bits on it, and runs very fast, used for a planer but more commonly called a jointer. It only planes on one side at a time, and you push it by hand over those bits; just hold your hand over the lumber and slip it through those bits." At the time Brown was operating it as a jointer. Describing the manner of his injury he said he was working on a piece of lumber 34 inches long" with a knot in it; it held it up when it went in front; I pushed it through, and the knives at that end cut three of the fingers off." The only defect in the machinery, according to appellee, was that some machines like the one he was then using were "supposed to have pressure rollers on top, and this one did not."

At the time Brown was injured he said Hershel Jackson was a helper, but he did not claim that when the injury occurred any one was at the machine except himself, and Jackson did not testify. Brown testified that prior to his injury appellant in using the same machine had his fingers "nipped," and appellant says Brown knew this fact. The testimony shows that Brown had been employed by appellant as a truck driver, but had wrecked a truck, and was laid off for a while; later and

some time in July of 1946, he was employed by appellant to make door and window frames. It is clear from the proof that appellee had complete charge of the operation of the machine, and nowhere does he claim that appellant was around the plant on the day of the injury, nor is there proof that Brown had ever complained to Batsel, or any one, that he was using a machine that was defective, or one without pressure rollers.

As best we can gather from the record appellant was at the time operating a meat store, a farm and a lumber business, handling mostly rough lumber. Some time in July appellee went to work making frames, apparently without the use of a machine. They had many orders to fill, and borrowed this jointer, and Brown and another witness installed it. Batsel, who was not a carpenter, said that he knew nothing about the operation of the machine, and when he tried it after installation he cut the end of his finger, a fact which appellee knew. From the time of its installation until the day of the injury, insofar as the record shows, no one operated the machine except Brown, unless it was his helper, Jackson. The record fairly shows that Brown was in charge of all operations. "He was his own boss all the time and never had any instructions from me."

One witness, testifying for plaintiff, said he was familiar with the type of machine operated by appellee; he thought it not good business practice to operate that type of machine. He said, "In factories we have pressure rollers, although when you don't have you got to get your hand in; one man over here pushes and turns it loose, the other man receives it over there. On this machine you would have to put your hand on it until it comes passing through the cutter. It is bound to be dangerous, if it happened to hit a knot, you could not get your hand away." He said he never noticed whether this machine had any way to fasten rollers on, but it would be a small job to weld them in.

As we read the evidence we fail to find any proof which fastens actionable negligence on defendant. On the other hand the proof is clear that appellant assumed any risk in continuing to operate the machine which he had helped install. The burden of proving negligence was on plaintiff. Codell Construction Co. v. White, 251

Ky. 574, 65 S. W. 2d 690, and cases cited. The master is required to use ordinary care to furnish employees with safe appliances and is negligent if he fails, and has control of the machine being operated. Pfiester's Adm'r v. Jones, 291 Ky. 151, 163 S. W. 2d 304.

The record shows that appellee was in control, and knew that under certain circumstances the machine was dangerous, but he continued to operate it from about July until in September when he was injured. Where the master has failed to provide the servant a safe place to work, assumption of risk by the servant applies if the servant knows of the danger and continues to work. Luton Mining Co. v. Louisville & N. R. Co., 276 Ky. 321, 123 S. W. 2d 1055. Where a workman continues to work with inadequate or defective tools he assumes the risk, if the defect is known or is obvious to a person of ordinary prudence, or that continuous use is liable to cause injury. Louisville & N. R. Co. v. Yett, 293 Ky. 71, 168 S. W. 2d 556; Kentucky Utilities Co. v. Clayton's Adm'r, 234 Ky. 454, 28 S. W. 2d 497; Chicago Veneer Co. v. Walden, Ky., 82 S. W. 294.

Under the facts presented, we conclude that the trial court should have sustained defendant's motion for a directed verdict. Therefore the judgment is reversed, and if there be another trial and the proof is the same, or of no more forceful legal effect than here presented, the court should direct a verdict in favor of defendant.

Judgment reversed.