**PADUCAH BATTERY CO. v. EDGAR.**

Court of Appeals of Kentucky.

Feb. 26, 1954.

C. Warren Eaton, Paducah, for appellant.

Joseph S. Freeland, Paducah, for appellee.

MOREMEN, Judge.

The appellee, Dorothy Edgar, filed an ordinary action against her former employer, appellant, Paducah Battery Company, by which she sought damages on account of severe eruptions of the skin resulting, as it was averred, from the negligence of her employers in furnishing to her a dangerous substance with which to work. Upon trial she obtained judgment in the sum of $2,080. It is not shown by the record whether or not the parties were eligible to operate under the Workmen's Compensation Law.

Appellant is engaged in the manufacture of dry cell batteries. On July 5, 1948, it employed appellee who was then 18 years of age. It has been difficult to obtain from appellee's testimony the exact sequence of events that followed her employment but it seems fairly certain that she worked rather consistently at the plant without incurring any ailment until the late summer of 1950, at which time she developed a skin irritation. She then had a "pick up" job on an assembly machine. About that time, when she was not too busy at her regular job, she was assigned to a job known as re-work which involved cleaning, from some of the cells, tar which adhered to them. The tar was removed by the use of a solvent referred to in this record as "oleum," "spirits of oleum" and "mineral spirits." Oleum is a product of the Standard Oil Company and is marketed under the trade name of Kyso Mineral Spirits.

Mrs. Edgar testified that she did not know how long she remained at this work before she took her first leave of absence nor the time of her first treatment. In October 1950, the process of manufacturing was changed and, on the 18th, her job classification was changed; she was then transferred to the surplus labor pool. The company's records indicate that the first time she applied for first aid was on October 16, 1950. She visited two doctors about this time whose testimony was not produced. The rash apparently persisted during this period until January 1951, at which time, because of her condition, she took a leave of absence of about 8 weeks. During this time the eruption subsided and she returned to work in March 1951, when she was assigned to dry re-work and did not use oleum during the process. She stated, however, that other persons were using the mineral spirits within a short distance of her. She worked for about 3 weeks and evidence of dermatitis again appeared. On April 20, 1951, she asked for and, by reason of seniority rights, was given the job of feeding cells to an assembly machine. The use of mineral spirits was not involved but she did come in contact with water and soon her complaint became progressively worse. She was taken off that job and put on one involving inspection work. On May 31, 1951, she worked for a couple of hours, quit because of her condition, and has not worked for the company since that date. On August 24, 1951, she visited Dr. C. M. Blanton, a specialist in dermatologies and allergies, and he stated he found a typical case of contact dermatitis. He made certain "patch tests" in order to determine whether four substances— asphalt, tar, a filling substance and spirits of oleum—were irritating to her skin and a probable cause of her condition. He concluded that spirits of oleum was the cause. He also stated that in connection with his

training and practice as an industrial physician and dermatologist and from his reading, he had learned that there is a fairly common experience of dermatitis among employees in battery industries. He did not undertake to testify concerning what specific agents caused this condition in the industry generally or to show that oleum spirits was the cause.

Kyso Mineral Spirits is a by-product in the manufacture of gasoline. It is an oily, volatile fluid closely related to kerosene and it is used for many cleaning purposes. The manager of the Standard Oil Company in Paducah testified that during his 18 years of experience he had never known anyone to suffer systemic poisoning or any ailment because of it. Mr. Bugg, office and personnel manager of the Paducah Battery Company since its establishment in 1948, testified that no other person at the plant had lost time at work because of dermatitis resulting from the use of mineral spirits.

■ We have held that damages for systemic poisoning resulting from a condition created by the negligence of the employer were recoverable in an action brought under common law. Midland Coal Co. of Olive Hill v. Rucker's Adm'r, 211 Ky. 582, 277 S.W. 838. It has been recognized that an employer is liable to an employee who has contracted an occupational disease where some negligence can be laid at the employer's door, such as failure to provide a safe place in which to work, or to warn the employee of some danger he was incurring, including the use of a dangerous substance, if it appeared that the employer had some superior knowledge of its dangerous qualities. Louisville & N. R. Co. v. Gilliland, 220 Ky. 431, 295 S.W. 422, 53 A.L.R. 386.

Appellee, in the case at bar, has predicated her right to recovery upon the theory that appellant (a) furnished her with an inherently dangerous substance with which to work and (b) failed to warn her of that danger.

■ Materials and instruments are inherently dangerous when the substances

and things, in their normal use and operation, are implements of injury and destruction. Cleary v. John M. Maris Co., 173 Misc. 954, 19 N.Y.S.2d 38. Before an employer is charged with the duty to warn, as was pointed out by Justice Cardozo, "There must be knowledge of a danger, not merely possible, but probable." MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A. 1916F, 696. We have held that an employee may not be carefree in this connection, and have ruled that where a workman continues to work with defective tools, he is charged with assumption of the risk of danger if it is obvious to a person of ordinary prudence that continued use is likely to cause injury. Batsel v. Brown, 310 Ky. 524, 221 S.W.2d 78. And an employer need not warn of a danger which the servant knows and appreciates. Westinghouse Electric & Mfg. Co. v. Deakins, 305 Ky. 385, 204 S.W.2d 434.

■ We find no proof in this record that the substance used was inherently dangerous. It is a standard product which has long been on the market; the experience of the employer and experience generally have demonstrated that the normal use of mineral spirits does not result in injury to the person using it. The employer should not be charged with knowledge of danger and a duty to warn that a substance is likely to cause injury and destruction when, in fact, it is not.

■ If anyone was negligent in this case, it was appellee who continued to work after indications of her skin condition had appeared and who returned to work after the condition had been arrested. In dealing with this subject, in 35 Am.Jur. 556, the writer said this:

"The principle of the law of negligence that responsibility for injurious consequences of one's conduct is determined in view of the showing as to whether he could have foreseen and prevented the harmful occurrence is fully applicable to actions by employees against their employers for injuries alleged due to the employer's negli-

gence. The authorities, although at times somewhat confused, demonstrate the applicability of the principle in determining the question whether responsibility for an injury to an employee is to be attributed to the employer or to the employee himself. Responsibility on the part of the employer is to be found in action or nonaction accompanied by knowledge actual or implied of the probable results of his conduct; and, likewise, responsibility on the part of the employee is to be determined by the same test. Knowledge, then, or opportunity by the exercise of reasonable diligence to acquire knowledge, of the peril which subsequently resulted in injury to the employee is fundamental to responsibility on the part of the employer."

We are of opinion that the court erred in refusing to direct a verdict for appellant.

Judgment reversed.