Albert L. CRUSH, Appellant,

v.

Ben M. KAELIN, Jr., Appellee.

Court of Appeals of Kentucky.

Sept. 29, 1967.

Wallace H. Spalding, Jr., Louisville, for appellant.

W. Scott Miller, Jr., Louisville, for appellee.

PALMORE, Judge.

The appellant, Crush, hired three carpenters including the appellee, Kaelin, to help him build a house. Kaelin was injured on the job and sued Crush for negligent failure to provide him a safe place and safe materials or equipment with which to work. Cf. KRS 338.030. Crush appeals from a $25,000 verdict and judgment against him in Kaelin's favor.

The case was submitted to the jury under the theory that the employment was within the coverage of the Workmen's Compensation Act, KRS Chapter 342, so that Crush could not avail himself of the defense of contributory negligence pleaded in his answer. KRS 342.410. Crush's motions for a directed verdict and for a judgment n. o. v. were overruled. It is our opinion that Chapter 342 was not applicable, that if Crush was negligent Kaelin necessarily was negligent also, and that Crush was and is entitled to a judgment n. o. v.

Early in the year 1963 Crush, who lived in Louisville, wished to build for his personal use a vacation cottage or lodge on a lot he owned at Guist Lake in Shelby County. He was a distributor and salesman of power transmission equipment and had little or no familiarity with the arts of carpentry and construction. He secured plans from a lumber company. Kaelin, a regular employe of a building contractor, had done some construction work for Crush's brother, who suggested to Crush that he try to get Kaelin to help in his spare time. Kaelin agreed to do so, and for a time the work was done by Crush, Kaelin and Crush's young son. After a month or so, at Crush's suggestion Kaelin procured the assistance of two other carpenters regularly employed by the same contracting firm for which he worked. The three carpenters worked for Crush parttime and he paid them on an hourly basis.

When the walls had been raised and rafters put in place it became necessary for the carpenters to erect scaffolding so they could work from a level above the surrounding grade. Shortly after completion of the scaffold one of its supporting members, a 2-by-4, broke under the weight of Kaelin and one or both of the other two carpenters, whereupon Kaelin fell a distance of several feet to the bottom of an excavation which had been made for the foundation and basement wall and sustained the injury that precipitated this litigation.

Crush did not participate in and was not present during construction of the scaffold and, in fact, did not see it until after the accident had occurred. The claimed negligence on his part is that he had failed (1) to have the excavation backfilled and (2) to provide materials suitable for the construction of a safe scaffold. Without pursuing the details, it may be assumed that Kaelin's evidence was sufficient to support a finding of negligence in these respects. It may be assumed also, though we need not so decide, that Kaelin was a servant rather than an independent contractor.

If it is true that Crush should have caused the excavation to be backfilled, so that it would be easier to construct an adequate scaffold and less hazardous to work on it, and that he should have provided heavier and stouter lumber for use as scaffolding, Kaelin nevertheless was fully aware of his having failed to do so when he (Kaelin) chose to build and use a scaffold with the materials at hand and under the circumstances as they were. "Where the master has failed to provide the servant a safe place to work, assumption of risk by the servant applies if the servant knows of the danger and continues to work. * * * Where a workman continues to work with

inadequate or defective tools he assumes the risk, if the defect is known or is obvious to a person of ordinary prudence, or that continuous use is liable to cause injury." Batsel v. Brown, 310 Ky. 524, 221 S.W.2d 78, 80–81 (1949). See also Mitchell v. Franklin, Ky., 398 S.W.2d 707 (1966).

Kaelin was experienced in the building and use of scaffolding. If Crush's failure to do that which he should have done created an unreasonable risk of harm to Kaelin, Kaelin was the first who should have recognized and appreciated it. He was the old hand, Crush the greenhorn.

The concept of assumed risk as distinguished from contributory negligence has been abandoned in the recent case of Parker v. Redden, Ky., 421 S.W.2d 586 (1967). The doctrine that one who assumes a known risk is barred from recovery regardless of the reasonableness of his choice has ceased to be legal tender in Kentucky. Nevertheless, "in a situation where the defendant's already-committed negligent acts of which the plaintiff is aware have created a risk also of which the plaintiff is aware * * * if there was no substantial necessity or urgency for the plaintiff's subjecting himself to the risk, or if the risk was one that easily could have been eliminated before the plaintiff took action, the plaintiff who took the risk must be considered as a matter of law to have acted unreasonably and he will not recover. * * * We think any problem can be eliminated by weighing reasonableness in the light of the necessity or urgency for the action and the difficulty of removing the risk before acting." Id., p. 592.

There was no "substantial necessity or urgency" for Kaelin's subjecting himself to the risk he claims was thrust upon him in this case. He was working as and when he pleased during off-hours from his regular employment. So far as we can discern from the record he was under no compulsion of any kind unless it was the need for more money than he was earning at his regular job. We do not belittle economic necessity, but even so there is no suggestion that a loss of this side-job with Crush was the only alternative to his going ahead under hazardous conditions. He did not, for example, make any serious effort to impress Crush with the existence of a substantial risk of injury. Indeed, from a reading of his testimony it is obvious that Kaelin himself really did not believe there was such a risk.

From what we have said thus far it follows that if it could be successfully maintained that Kaelin, knowing all that Crush knew and having then built the scaffold, was not negligent in using it, neither can Crush have been negligent. Hence Crush could not be liable unless his duty under KRS 338.030 to furnish a safe place to work and such safeguards as were reasonably necessary for the protection of his employes was an absolute duty as distinguished from the duty to exercise ordinary care in these respects.

The common law duties of the master to provide for the safety of his servants are not absolute. "The master is not an insurer of the safety of his premises. He is only required to use ordinary care to make them reasonably safe for the uses for which they are intended." Interstate Coal Co. v. Shelton, 152 Ky. 92, 153 S.W. 1, 3 (1913). "An employer's obligation to its employee is not the frequently impossible duty of furnishing absolutely safe instrumentalities or place to work. Its duty is to provide its employee with a place reasonably safe having regard for the character of work and reasonably safe tools and appliances for doing the work. The measure of duty is to exercise ordinary or reasonable care to do so. The standard is the care exercised by prudent employers in similar circumstances." Happy-Scuddy Coal Co. v. Combs, 310 Ky. 52, 219 S.W.2d 968, 970 (1949).

KRS 338.030 was enacted as § 3, Art. II of the Hunnicutt Act, c. 105, Acts of 1940, which among other things created the Kentucky Industrial Safety Board and

authorized the formulation and promulgation of safety standards and regulations. There is no indication in the Act, or otherwise, that the general provisions for safe places of employment, safe methods and practices, and reasonable safeguards were intended to make the employer an insurer. Had that been the purpose, the formulation of standards by an administrative body would have been superfluous and unnecessary. It may be that a specific standard or regulation, once promulgated, fixes an absolute duty, but the mere statutory recitation of general duties theretofore existing at common law cannot reasonably be construed as anything more than a codification of established principles.

■ In holding that the workmen's compensation law does not apply to the employment relationship in this case we do not underestimate the importance of the question and the significance of our decision. KRS 342.005 brings within the coverage of the law "all employers having three or more employes regularly engaged in the same occupation or business," with enumerated exceptions including domestic employment. It can be reasonably argued that in the absence of a specific exclusion the word "employer" means any employer in any type of employment situation. It can be logically countered that any employment in, about and concerning an individual employer's private residential premises is "domestic employment." But we need not resort to a technical approach. The fact is that we do not believe the social objectives of workmen's compensation in shifting the risk of injury from the workman to the employer, and thence to the consuming public, cf. Ratliff v. Redmon, Ky., 396 S.W.2d 320, 324 (1965), were or are intended to embrace the domain of an employer's private household affairs. In arriving at this conclusion we are by no means alone. "It

appears * * * that whatever the statutory background, the courts will not ordinarily find in the compensation act coverage of work undertaken by a person as, so to speak, a consumer instead of a producer." Larson's Workmen's Compensation Law, § 50.22, p. 740.

The decisions cited in support of Kaelin's position that his employment by Crush was subject to the workmen's compensation law are all cases in which, obedient to the direction of KRS 342.004 that the chapter be liberally construed on questions of law, this court has taken a broad view in favor of coverage, particularly as to the status of the injured workman, but none of them involved the question of whether the provisions of the act itself were applicable to the employer. Cf. McCorkle v. McCorkle, Ky., 265 S.W.2d 779 (1954); Brewer v. Millich, Ky., 276 S.W.2d 12 (1955); Dick v. International Harvester Company, Ky., 310 S.W.2d 514 (1958); Bowen v. Gradison Const. Co., 236 Ky. 270, 32 S.W.2d 1014 (1930); Ratliff v. Redmon, Ky., 396 S.W. 2d 320 (1965); and Smith v. Klarer Company, Ky., 405 S.W.2d 736 (1966). In the *Dick* case, for example, there was an issue as to whether the employer had accepted the silicosis provision, but no question as to its eligibility. We do not say that the rule of construction stated by KRS 342.004 does not extend to the type of question before us in this case; only that it does not command a result not called for by the spirit and purpose of the act. This is not, in our opinion, a marginal case.

The judgment is reversed with directions that a judgment n. o. v. be entered in favor of the appellant.

All concur.