[Civ. No. 48040. Second Dist., Div. Four. Aug. 25, 1976.]

ISABEL McCALLISTER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
JANET CLARK et al., Respondents.

**COUNSEL**

Ghitterman, Schweitzer & Herreras and Brian F. Hourigan for Petitioner.

Harris, Parke & Barnes and William J. Tewksbury for Respondents.

**OPINION**

**KINGSLEY, J.**—The compensation judge found petitioner, the applicant in the underlying compensation proceeding, to have been "engaged in household domestic service" (Lab. Code, § 3352 subd. (e)) for less than 52 hours per week (Lab. Code, § 3358.5) and thus to have been an employee excluded from compensation coverage.

The appeals board, one member dissenting, concurred without further comment.

We have issued a writ of review and examined the entire record, including transcripts of the testimony.

█ We conclude that, inasmuch as the applicant's service was solely to care for and wait upon an elderly and invalid woman, and included no duties in connection with the maintenance or functioning of a household, she was not excluded by the statutory provision. Accordingly, we annul the board's orders and remand the case for further proceedings.

*The Evidence*

The nature of applicant's employment was described in her testimony and that of Mrs. Janet Clark. There was no significant conflict in the evidence in this regard. Mrs. Clark was the daughter and conservator of Mrs. Barbara Feliz. In the year preceding her death on September 15, 1975, Mrs. Feliz was "aged," but "wasn't ill." She was cared for in her home in Santa Barbara on an around the clock basis, first by Mrs. Rosa Chavarria and later by Mrs. Betty Stevens. The qualifications of Mrs. Chavarria are not mentioned, but Mrs. Stevens was "a nurse." Other than that they "took care of" Mrs. Feliz, the full duties of Mrs. Chavarria or Mrs. Stevens are not described, nor is there any indication whether

there were any other employees connected with the household. Apparently Mrs. Feliz was the only family member who resided there.

In the fall of 1974, "Mrs. Chavarria was there all of the time, except for three hours a day in the afternoon, then she'd have this other lady come in and take care of her [Mrs. Feliz]." The "other lady" left and applicant was hired "to relieve" Mrs. Chavarria on Saturdays, instead of on afternoons.

During the week, applicant was employed full time as an electronics assembler. She was not a licensed vocational nurse and had never "worked as a nurse at any hospital or rest home or anything like that."

Her function, however, was "to watch" Mrs. Feliz, "to care for her," and "to relieve" Mrs. Chavarria in this respect. Mrs. Clark considered that "my mother had to have somebody with her," "to fix her lunch and do anything that my mother asked." Applicant was paid from the conservatorship account, but no workers' compensation insurance was obtained.

Applicant's hours were roughly 8 a.m. till 5 p.m. While Mrs. Chavarria was still there, "when I [the applicant] would get there at 8 o'clock Mrs. Chavarria would already have her [Mrs. Feliz] bathed and she would be giving her breakfast. . . . So, only thing I would do during the day after that was help her go to the rest room, and fix her her lunch, and get things that she needed."

After Mrs. Stevens replaced Mrs. Chavarria, "then I [the applicant] had to give her [Mrs. Feliz] breakfast and bathe her and . . . change her and fix her bed and everything like that." "Change her" meant "when we bathe her . . . change her clothes. Sometimes she would wet the bed or something like that."

"She didn't walk . . . and I used to sit there with her and take care of her. . . . [T]he only time that I would . . . do anything for her, like if she had to go to the rest room, then I would help her . . . I did the lunch for her. I also cooked lunch for her, too. . . . I never fixed dinner for her."

Applicant did no other cooking, cleaning or household chores, but she did "straighten up" Mrs. Feliz' bedroom. She did not work in any other room of the house. On the date of her alleged injury, applicant passed her idle time by reading.

Applicant described her injury on April 19, 1975, as follows:

"Well, when I went to work in the morning I did the usual thing of bathing her and giving her breakfast. And then when I went in to make up her bed, when I was fixing her bed up, pulling on the blankets, I bend [*sic*] over and my back popped and it hurt quite a bit. Then I continued doing what I was doing. And that is what happened. Just started hurting from then on."

She went to the doctor on April 21st and subsequently had a back operation. Her claim, of an on-the-job injury was disputed by the defendants, but no finding was made as to that issue or others because of the more basic finding that her employment was excluded "household domestic service."

*Discussion*

Section 3351 of the Labor Code, defines an "employee" for the purposes of the Workers' Compensation Act, as ". . . *every* person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed . . . ." (Italics added.)

From that broad and general definition, section 3352 sets forth a series of employments not covered by the act. As of the date of the events herein involved, one such exemption was contained in subdivision (e) of that section, as follows: "Any person engaged in household domestic service except as provided in Section 3358.5.[1] For the purposes of this subdivision, household domestic service shall include, but not be limited to, the part-time care and supervision of children in a private residence."

In light of the broad provisions of section 3351, we approach the case before us, not by defining the character of Mrs. McCallister's employment, but by deciding what that character was not. Unless she was engaged in "household domestic service," she was covered by the act.[2] It

[1]Section 3358.5 brought within the coverage of the act, "[a]ny person engaged in household domestic service who is employed by one employer for over 52 hours per week. . . ."

[2]As Mr. Hanna observes, "It should be carefully noted as to such excluded *employees*, however, that their ineligibility for benefits is limited to the precise circumstances which bring them squarely within the terms of the applicable statutory exclusion." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 5.02 [1].) Under even the earliest decisions dealing with the household domestic exclusion, it was stated

is equally unimportant whether she was a professional nurse, vocational nurse, or other person in a professional or semi-professional status.

Although the problem has recurred, there is a dearth of authority for distinguishing between the lower echelons of health care services provided in the home to a member of the household and excluded "housekeeping," "housework," or "domestic service." The compensation judge relied upon three decisions of the board,[3] including a "writ denied" decision, to the effect that a combination of duties of keeping house with waiting on or caring for an invalid is excluded. In such cases, the infant, elderly or infirm person may be merely a feature of the household or the housekeeping may be made necessary by the condition of that person.

Petitioner urges a board decision[4] holding not excluded a "practical nurse" who cared for a baby and ailing mother in the home, particularly where the "domestic duties" were performed by another employee. The suggestion is that, while Mrs. Chavarria and Mrs. Stevens may have been "engaged in household service," petitioner, having been spared any routine housekeeping chores, was not. There was also a very early decision of the Industrial Accident Commission that a nurse "occupied entirely with the bathing, cleaning, nursing and diverting of an invalid" was not engaged in the excluded domestic service.[5]

From those decisions Hanna is able to distill only the statement: "Services not normally required in household operation, such as nursing care for an invalid, are not excluded. But the performance of customary household chores coupled with some practical nursing is not covered. . . ." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 5.02 [2] [c].)

The compensation judge and respondents refer to *New Amsterdam Cas. Co.* v. *Indus. Acc. Com.* (1934) 137 Cal.App. 719 [31 P.2d 245], as the

that "it is the duty of the courts to interpret this act with a view toward making compensation as general as may be practicable and reasonable . . . the exception of 'household domestic service' should be carefully restricted . . . in the solution of problems such as that before us here, or inquiry must be this: Is the employment *unmistakably excluded* by the terms of the act?" (*Lacoe* v. *Industrial Acc. Com.* (1930) 211 Cal. 82, 85-86 [293 P. 669]; italics in originals.)

[3] *Howard* v. *O'Halloran* (1940) 5 Cal.Comp. Cases 103; *Preston* v. *IAC* (1937) 2 Cal.Comp. Cases 57; *Angelo* v. *Wright* (1974) 2 Cal. Workers' Comp. Rptr. 67.

[4] *Smith* v. *Griffith* (1967) 32 Cal.Comp. Cases 243.

[5] *Brown* v. *Nunan* (1917) 4 I.A.C. 51.

one officially reported decision on the problem. In that case, a "practical nurse," with all of the "knowledge and experience . . . of a professional nurse," became "a companion and personal servant" to an elderly employer. She was held to have been an "inservant" for purposes of a compensation policy covering that category. However, in that case the contrary suggestion was that she was an "independent contractor," rather than either an excluded or covered "employee." The opinion (137 Cal.App. at p. 722) pointed out that, at its highest professional echelon, nursing is done as an independent contractor rather than as an employee (*Moody* v. *Industrial Acc. Com.* (1928) 204 Cal. 668, 672 [269 P. 542, 60 A.L.R. 299]), but that classification for compensation law purposes is according to services or duties actually performed, rather than according to qualifications or professional status. (See also *West* v. *Ind. Acc. Com.* (1947) 79 Cal.App.2d 711, 715 [180 P.2d 972].)

In the situation before us, each case must be determined on its own facts. Every household having living therein an aged, infirm or invalid member will employ and utilize its household staff in a different manner. In some cases, the care of such a member will be only a minor part of general housekeeping services; in others there will be an admixture of personal care and housekeeping duties; in others, the personal care duties will be the only service required of a particular employee. We read the reported cases, and Mr. Hanna's observation, as including the first two situations within the statutory category of "household domestic service," and the third as excluding the statutory category.

On the record before us in the case at bench, where Mrs. McCallister performed, and was expected to perform, only those duties directly related to the care and comfort of Mrs. Feliz, and where Mrs. McCallister did not perform, and was not expected to perform, any services connected with the general operation and maintenance of the household or the house, she was *not* engaged in household domestic service.

The award is annulled; the case is remanded to the board for further proceedings consistent with this opinion.

Files, P. J., and Jefferson (Bernard), J., concurred.