[Civ. No. 22619. Third Dist. Apr. 16, 1984.]

KAISER FOUNDATION HOSPITALS, Plaintiff and Appellant, v.
OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,
Defendant and Respondent;
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,
Real Party in Interest and Respondent.

Counsel

Robert D. Peterson for Plaintiff and Appellant.

Elise B. Manders for Defendant and Respondent.

Michael D. Mason and Neil P. Sullivan for Real Party in Interest and Respondent.

Opinion

BLEASE, Acting P. J.—Kaiser Foundation Hospitals (Kaiser) appeals from denial of relief in an administrative mandamus action seeking to overturn a decision of the California Occupational Safety and Health Appeals Board. (See Lab. Code, § 6627 et seq.; Code Civ. Proc., § 1094.5.) The board affirmed, in pertinent part, the order and decision of an administrative law judge upholding a citation and imposition of a $500 civil penalty against Kaiser for violation of an industrial safety order. (See Lab. Code, § 6317.)[1] The safety order requires employers to report, inter alia, "Maintenance . . . activities in which any materials containing more than 1% asbestos (dry weight) are sanded, ground, abrasive blasted, sawed, cut, shoveled, removed, or otherwise handled in such a manner that asbestos dust would be raised." (Cal. Admin. Code, tit. 8, § 5208, subd. (*l*)(1)(C).) Kaiser contends the decision of the board was not supported by substantial evidence. We will affirm the judgment.

### Facts

An investigator of the Division of Occupational Safety and Health conducted a permissive search of Kaiser's hospital facility on MacArthur Boulevard in Oakland. He discovered that when the building had been constructed beam supports and floor parts had been coated with an insulating material with the trade name Monicote, as a fire retardant. He gathered samples of debris from the floor adjacent to areas coated with the Monicote on the mezzanine floor near the bottom of the building and from the penthouse on or near the roof. This material appeared identical with the material coating the beams. He also gathered a sample of dust from the stairway leading to the penthouse area.

---

[1]No issue is raised concerning the propriety of the civil penalty in this case, i.e. on the ground it may have been a "first-instance" violation (see Lab. Code, § 6317). We imply no view on this question.

Laboratory analysis revealed the floor debris samples contained between 15 percent and 30 percent asbestos. The analysis of the stairway dust sample revealed it contained between 5 percent and 10 percent asbestos. The asbestos in the samples included free fibers and fibrils.

Edward Raubot, a Kaiser housekeeping employee, testified one of his infrequent tasks was to sweep the stairs from which the dust sample was taken. He used a dry broom to perform the task and had last done so approximately one year before the hearing on the matter. He had dust mopped the room in the mezzanine where the debris sample was collected approximately two years earlier.

Narciso Pavilla, a maintenance worker employed by Kaiser, testified that in his capacity as a union shop steward, he had accompanied the state investigator during his search. Pavilla is familiar with the Monicote insulation material that had been discussed in the testimony of the state inspector. He has seen it in his day-to-day work in repair of pneumatic tube system pipes in the false ceiling crawlspaces of the building. In this work and in repair of water pipes, he had knocked portions of the insulation material loose in crawling through the false ceiling area. Tasks entailing a worker crawling in this area arise approximately once each day. Pavilla also related that each day a maintenance worker was required to go to the penthouse room (where a debris sample had been gathered). The worker would remain a few minutes to inspect and to do preventive maintenance on compressors.

Dr. Robert Johnson is a physician employed by the state who specializes in occupational health. Johnson testified that from a medical perspective there is *no* safe level of asbestos exposure. Based on the testimony of Raubot and Pavilla and assuming that the insulation material contained asbestos, Johnson opined the activities they described could raise asbestos dust. Raubot would be exposed to dust stirred up by the sweeping process. If Pavilla were to kick the asbestos-laden debris, step on a clump or otherwise disturb it this would produce small amounts of dust. Dislodging insulating material in the crawlspace would raise asbestos dust.

In its decision after reconsideration the respondent appeals board succinctly related its operative finding of facts. "The evidence in this case established Employer's employees were making repairs to pipes where asbestos containing material was located. The asbestos containing material was monicote which has approximately six to ten percent asbestos. Asbestos dust was on the floor in this area. The dust is raised when a person walks through this area because this kicks up the dust. Dust was also released by an employee's brushing against the small area containing exposed asbestos con-

taining insulation where employees would work between the ceiling of one floor and the floor above it. The Appeals Board finds that these activities bring Employer within the purview of the reporting requirements."

## DISCUSSION

■ Kaiser's sole cognizable contention on appeal is that no substantial evidence supports the finding it engaged in an activity for which reporting was required.[2]

Kaiser does not overtly challenge the validity of the safety order. The order compels an initial report of present and forseeable future maintenance activities in which materials containing more than 1 percent asbestos are dealt with in such a manner that asbestos dust would be raised. (Cal. Admin. Code, tit. 8, § 5208, subd. (l)(1)(C).)[3]

Kaiser's facility has Monicote insulating material on beam supports and floor parts. In the absense of a contrary showing, it is permissible to infer that the composition of this material is the same throughout the building. Accordingly, it is inferable the debris collected and tested is representative of insulation which might be dislodged by mechanical action anywhere in the building. Both the debris samples and the dust sample from the stairwell were materials containing more than 1 percent asbestos. Uncontested evidence demonstrated maintenance activities of Kaiser employees entailed mechanically acting upon such material. The presence of asbestos in the dust in the stairwell, the opinion testimony of Dr. Johnson, and common lay

[2]Kaiser also contends in its brief that there is no substantial evidence of its failure to report. Kaiser did not offer any proof of reporting. Its argument is that the evidence of failure to report was incompetent or without adequate foundation. This contention was not raised in Kaiser's petition for reconsideration of the order and decision of the administrative law judge. "The petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration." (Lab. Code, § 6618.) Identical language in Labor Code section 5904 has long and consistently been construed to mean precisely what it says and given effect. (See, e.g. *Anderson-Cottonwood Disposal Service* v. *Workers Comp. Appeals Bd.* (1982) 135 Cal.App.3d 326, 334 [185 Cal.Rptr. 336].) Accordingly, the contention of no substantial evidence of failure to report may not be considered. (Compare *New Amsterdam Cas. Co.* v. *Indus. Acc. Com.* (1934) 137 Cal.App. 719, 724 [31 P.2d 245].)

[3]The burden of reporting does not appear excessive. The regulation provides: "NOTE: It is not intended that each activity listed in paragraph (l) (1) involving asbestos or asbestos-containing products be reported upon each use or activity. Anticipated present and future use reported initially is sufficient to comply with this Section."

experience with activities such as breaking apart, treading upon and sweeping up materials supports the conclusions these activities would raise dust.[4]

■ Another provision of the asbestos safety order establishes maximum levels of exposure of employees to airborne asbestos which may not be exceeded. (Cal. Admin. Code, tit. 8, § 5208, subd. (a).) Kaiser half-heartedly implies the evidence on this point is insufficient because no experimental or in situ testing was adduced showing that maintenance activities would or did generate airborne fibers in excess of these maximum levels. However, the requirement of reporting asbestos dust-raising activities is triggered without regard to the level of dust. (See Cal. Admin. Code, tit. 8, § 5208, subd. (*l*)(1)(C).)

The reporting requirement by its terms does not depend upon exceeding maximum thresholds. It broadly extends to the employer's consumption and production activities which entail fabrication with asbestos-containing materials. (Cal. Admin. Code, tit. 8, § 5208, subd. (*l*)(1)(A).) In what is perhaps an excess of caution a separate provision explicitly extends the reporting requirement to maintenance activities. The various tasks of Kaiser employees demonstrated in the record, mopping, sweeping, pipe repair, and machine lubrication are archetypical maintenance activities. Whenever such activities entail, inter alia, grinding, removing, or otherwise handling asbestos-ladden materials in a manner likely to raise *any* asbestos dust a report is compelled. (Cal. Admin. Code, tit. 8, § 5208, subd. (*l*)(1)(C).)

The respondent board has construed the reporting regulation concerning maintenance to mean what it says. It seems patently superfluous to note this interpretation is entitled to great weight in our review. (See, e.g. *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].) Here the construction is reasonable in view of evidence that there is no safe level of exposure to asbestos dust. The state has a palpable interest in compelling reports of potential asbestos hazards regardless of a demonstration the hazard has resulted in exceeding current permitted exposure levels. Accordingly, the evidence which Kaiser contends is indispensible is not.

---

[4]Dust is "[p]articles of solid matter, other than fumes, in such a state of comminution that they may be inhaled." (Cal. Admin. Code, tit. 8, § 5140.) Kaiser's expert witness, Dr. Maurice Oberg, conceded that stepping on a clump of the insulation material could generate asbestos dust: "It is entirely possible that some fibers would be released in such a situation."

The judgment is affirmed.

Carr, J., and Couzens, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.