472 So.2d 1223 (1985)
Evelyn SMITH, Appellant,
v.
Annie FORD, Appellee.
No. AY-103.
District Court of Appeal of Florida, First District.
June 14, 1985.
Rehearing Denied August 16, 1985.
*1225 Joel T. Daves, III, of Burdick & Daves, West Palm Beach, for appellant.
Harry Goodmark of Goodmark & Goodmark, West Palm Beach, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a workers' compensation order awarding claimant temporary total disability benefits, plus interest and penalty, payment of past medical bills and remedial treatment and attention as required. The issue presented is whether claimant was a domestic servant in a private home and thus excluded by Section 440.02(13)(c)1, Florida Statutes,[1] from the Workers' Compensation Law.
The facts are that, on April 20, 1983, while driving home after picking up her employer's dog at the veterinarian's office, the claimant sustained personal injuries in a car accident. The record shows that, at the time of the claimant's accident, five other persons worked for her employer.[2] The deputy commissioner found that claimant's normal duties were (1) domestic and (2) personal care of her employer. In his order, the deputy recognized this combination of duties but determined that at least 50 percent of the duties (personal care of the employer) were those of a personal attendant, which the United States Department of Labor classifies as a personal service occupation rather than a domestic service occupation under the category of home attendant. The deputy concluded that the claimant's duties as a home attendant afforded her coverage under the Workers' Compensation Law.
Section 440.02(13)(c)1, Florida Statutes, provides: "The term `employment' does not include service performed by or as domestic servants in private homes." Florida's Workers' Compensation Law, does not define "domestic servants in a private home," nor does there seem to be any Florida case clearly defining the term.
However, one authority has suggested that the test of the domestic servant exclusion is "at least two-pronged."[3] Both the nature of the employment and the service being performed are considerations. However, the fact that the duties being performed at the time of the accident were of such a nature that they could, strictly speaking, have been performed by one other than a domestic does not change what would otherwise be the nature of employment.[4] In Jack v. Belin's Estate, 149 Pa. Super. 531, 27 A.2d 455, 457 (1942), the court discussed "domestic servant" as follows:
In a strict sense a domestic servant is one who resides in the same house with the master whom he serves (1 Bouv. Law Dict., Rawle's Third Rev., p. 914); one who lives in the family of another as a hired household assistant; a house servant (19 C.J. 389; 27 C.J.S., Domestic, p. 1318; 1 Blackstone 328). But, in its broader meaning, "domestic" also includes services "pertaining to one's house or home, or one's household or *1226 family; relating to home life." (Webster).
The coupling of domestic servants with agricultural workers, in the same Act, is significant. Agricultural workers are those who are engaged in an enterprise conducted by the employer for his profit. House servants merely contribute to the personal needs and comfort of the employer. Between the two groups are the outservants, who in strictness do not fall within either class. And yet there is much better reason for excluding gardeners, caretakers and the like, than agricultural workers, for they are not engaged in a commercial enterprise and their services all relate to the home life. Our conclusion, in construing the Act, is that the place where the services are performed does not determine the nature of the employment. Cooks and house maids are domestic servants, not because they work indoors, but because they serve the needs of the household. Similarly, one who drives an automobile in bringing supplies from market or in disposing of waste materials or who raises vegetables and produce for use on the estate is a domestic servant in the broader sense contemplated by the Act. [emphasis added]
In Belin's, the claimant considered himself a gardener but performed other duties such as delivering, by farm truck, milk, butter, and eggs, or produce raised on the estate, where claimant worked, to the "mansion house and to the homes of the sons and to the families of the workmen who lived on the estate." Id. The court noted that the estate was not operated in any way for commercial purposes.
Thus, in the instant case, the claimant clearly worked in the employer's private home and the fact that the errand which led to claimant's injuries required her to go outside the home does not affect her status as a household domestic. Domestic services may, by definition, include chores and errands outside the house or away from the domestic premises.
The deputy found that claimant performed a combination of personal care and housekeeping duties but ruled claimant was not a household domestic, citing McCallister v. Workers' Compensation Appeals Board, 61 Cal. App.3d 524, 132 Cal. Rptr. 527 (1976), wherein the California court held that the employee was not a domestic servant since her duties, though related to the care and comfort of the employer, did not involve the general operation and maintenance of the household. However, the court in McCallister discussed the situation where the employee's duties are a mixture of personal care and housekeeping duties, concluding that such employment would be classified as household domestic service (McCallister, supra, 132 Cal. Rptr. at 530):
In the situation before us, each case must be determined on its own facts. Every household having living therein an aged, infirmed or invalid member will employ and utilize its household staff in a different manner. In some cases, the care of such member will be only a minor part of general housekeeping services; in others there will be an admixture of personal care and housekeeping duties; in others, the personal care duties will be the only service required of a particular employee. We read the reported cases, and Mr. Hannah's observation, as including the first two situations within the statutory category of "household domestic service," and the third as excluding the statutory category.

In the record before us in the case at bench, where Mrs. McCallister performed, and was expected to perform, only those duties directly related to the care and comfort of Mrs. Feliz, and where Mrs. McCallister did not perform, and was not expected to perform any services connected with the general operation and maintenance of the household or the house, she was not engaged in household domestic service. [emphasis added]
Although citing McCallister, supra, the deputy disagreed that employment which involved an admixture of personal care and housekeeping duties would be classified as household domestic service. However, in *1227 Gunter v. Mersereau, 7 Or. App. 470, 491 P.2d 1205 (1971), another nursing case, claimant, who had worked as a nurse's aide, was hired to care for a stroke victim who needed 24-hour attention. Claimant's duties included giving the stroke victim oral medication, heating dinner and feeding it to the patient, washing dinner dishes, bathing the patient, and sometimes helping her in and out of her wheelchair. Claimant injured her back while lifting the patient out of her wheelchair. The appellate court affirmed the lower court's denial of benefits on the basis that claimant was a domestic servant and therefore excluded from workmen's compensation coverage, holding, in pertinent part (491 P.2d at 1206-07):
The motivating philosophy behind workmen's compensation acts is that the loss arising from accidents in industry should be distributed between the employer and consumer as a cost of production. The domestic servant exception recognizes that the home owner, who receives no pecuniary profit from maintaining his home, should not be made to bear what would amount to the total burden of compensation protection. [citations omitted] Convenience in administration of the Act has also been cited as a factor. [citations omitted] Claimant's employment in defendant's home would seem to come within the general intent of the statutory exception.
The Oregon court, under an exclusion similar to Florida's, gave this definition of domestic servant: "`[A] person hired or employed primarily for the performance of household duties and chores, the maintenance of the home, and the care, comfort and convenience of members of the household.'" Id. 491 P.2d at 1207. The court also concluded that "[t]he true test is the nature of the work actually done." Id. The court observed that the fact that claimant may have been hired because of her nurse's aide training did not change her status under the workmen's compensation act.
For the purposes of this case, it is unnecessary to determine the status of an employee whose duties are solely, or almost exclusively, those of a practical nurse. The deputy's findings here were that claimant's duties were almost evenly divided and included both the duties of a housemaid and those of a "personal attendant." Thus, even were we to hold that the "personal attendant" duties were nondomestic, the admixture of duties would still result in claimant being a domestic servant in a private home.
We reverse and hold that the claimant's household duties placed her in the excluded category. In this regard, we note that the intent of the Workers' Compensation Law is to provide compensation benefits to injured employees through a mechanism which allows the placing of the cost of the work-connected injuries on the industry involved and ultimately on the consumer through the medium of insurance, as stated by Larson:[5]
Workmen's compensation is a mechanism for providing cash-wage benefits and medical care to the victims of work-connected injuries, and for placing the costs of these injuries ultimately on the consumer, through the medium of insurance, whose premiums are passed on in the cost of the product.
The exclusion of domestic servants is in accord with the intent of the Workers' Compensation Law and is to be fairly applied with that intent and purpose in mind.[6] Private homes having domestics who perform a combination of household duties and personal care services for infants, disabled, or elderly persons are not within the intent *1228 of the act or required under its terms to be covered by workers' compensation insurance.
Accordingly, the order below is REVERSED.
SMITH and THOMPSON, JJ., concur.
NOTES
[1] Formerly numbered Section 440.02(1)(c)1, Florida Statutes (1981).
[2] The record does not clearly establish that claimant's employment was subject to the provisions of Chapter 440, Florida Statutes, since there was no determination that her employer had three "employees" as defined in Section 440.02(11)(a)-(d), Florida Statutes. However, this issue was not raised.
[3] 6 E. Davis, West's Florida Practice, Workers' Compensation § 84, 123 (1982).
[4] Black's Law Dictionary 434 (rev. 5th ed. 1979), defines domestic as "[a] household servant," and, at 1227, defines servant as:

One employed to perform service in master's affairs, whose physical conduct in performance of the service is controlled or is subject to right to control by the master. [citations omitted] A person in the employ of another and subject to his control as to what work shall be done and the means by which it shall be accomplished. [citations omitted] One who is employed to render personal service to another otherwise than in the pursuit of an independent calling, and who, in such service, remains entirely under control and direction of employer.
[5] 1 A. Larson, The Law of Workmen's Compensation § 1.00 (rev. ed. 1985).
[6] Crush v. Kaelin, 419 S.W.2d 142, 145 (Ky. 1967):

It can be reasonably argued that in the absence of a specific exclusion the word "employer" means any employer in any type of employment situation. It can be logically countered that any employment in, about and concerning an individual employer's private residential premises is "domestic employment." But we need not resort to a technical approach. The fact is that we do not believe the social objectives of workmen's compensation in shifting the risk of injury from the workman to the employer, and thence to the consuming public, cf. Ratliff v. Redmon, Ky., 396 S.W.2d 320, 324 (1965), were or are intended to embrace the domain of an employer's private household affairs. In arriving at this conclusion we are by no means alone. "It appears * * * that whatever the statutory background, the courts will not ordinarily find in the compensation act coverage of work undertaken by a person as, so to speak, a consumer instead of a producer." Larson's Workmen's Compensation Law, § 50.22, p. 740.
1C A. Larson, The Law of Workmen's Compensation § 50.25 (1982), in pertinent part:
It has always been assumed, rightly or wrongly, that the cost of compensation protection did not become a burden upon the employer directly, since he was expected to pass the cost along to the consumer in the price of the product... . Whether or not Lloyd George ever really said that "the cost of the product should bear the blood of the working man," it was in the setting provided by this idea that the principle became established of the business employer's unilateral noncontributory liability without fault toward anyone who might retroactively be determined by a court to have a claim upon him for compensation.
When a similar liability is imposed upon the householder, however, who produces and sells no goods or services that can bear the cost of compensation insurance, the law has gone one step further and said that any employer, solely because he stands in the employment relation to an employee, is liable without fault for the latter's injuries and must assume and absorb the entire ultimate cost himself... . .
... . [S]imply to impose workmen's compensation liability on householders, either by judicial decision or by statutory extension, would mean, first, that the employer would bear all the cost of protection in this category of wage-loss, and, second, that he could never be quite sure in advance whether he needed compensation insurance and what his potential future liability might be. No closer questions can be found in the entire shadowy realm of employee status than the very questions that would face the householder many times every year: the status of directly hired window washers, repairmen, snow shovelers, grass mowers, baby-sitters, and all the army of artisans whose visits are a normal and frequent incident in life of a house owner. No one would dare to let a handyman climb to his precarious perch on a stepladder and remove a storm window without first taking out compensation insurance for the day. [footnotes omitted]