## Coleman, et al. v. Freeman.

(Decided October 2, 1914.)

### Appeal from Jefferson Circuit Court (Common Pleas, Fourth Division).

1. Master and Servant—Operation of Elevator—Instructions.—In an action for damages for personal injuries growing out of the dangerous and defective condition of an elevator, defendant cannot complain that the jury, in order to find for plaintiff, are required to believe more than was necessary for a recovery, or to pass on admitted facts.

2. Master and Servant—Operation of Elevator—Instructions.—An instruction to the effect that the motive power by which an elevator is operated is a part of the elevator and may be considered

in determining the condition of the elevator, is not erroneous on the ground that it gives undue prominence to certain facts, since the motive power is essential to the proper operation of the elevator, and without such instruction the jury might conclude that the defendants were under no duty to see that the motive power was in proper condition if furnished by someone else.

3. Master and Servant—Operation of Elevator—Evidence.—Evidence that an elevator has frequently stopped during the same year is not too remote to be admissible, but is competent for the purpose of showing knowledge on the part of defendant and an opportunity to repair.

O'NEAL & O'NEAL for appellants.

BENNETT H. YOUNG and SAMUEL G. TATE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for personal injuries, plaintiff, Mrs. Katherine Freeman, recovered a verdict and judgment against defendants, Mrs. Mary A. Coleman and Mrs. Isabel C. Walker, for the sum of $500. The defendants appeal.

The facts are as follows: Defendants own what is known as the "Walker Building," which is situated on the corner of Fifth and Market streets in the city of Louisville. In this building is an elevator which is used at nights to move the cleaners from floor to floor. On the occasion of the accident the elevator was in charge of Mrs. Margaret Weston, who was the forelady, and who directed the movement of the cleaners from one floor to another. Plaintiff was one of the cleaners employed in sweeping and dusting the offices. On September 25, 1910, she was directed by Mrs. Weston to get on the elevator. Mrs. Weston got on the elevator with her and proceeded to operate it. While the machine was going up it stopped between the first and second floors. The women attempted to move the elevator, but could not do so. In ten or fifteen minutes a policeman and a telegraph operator responded to their cries for help. After trying to move the elevator, they deemed it best to remove Mrs. Freeman and Mrs. Weston by pulling them through an aperture on the second floor. In order to get Mrs. Freeman out she had to lift her hands above her head, and was then drawn by the men above through the aperture, thus causing the injuries of which she complains. Plaintiff claims that she complained about

the elevator, and that the foreman assured her it was not dangerous, and also directed her and the other employes to continue the use of the elevator. Plaintiff knew of its stopping once before that.

D. L. Bailey, a witness for plaintiff, was asked if the elevators did not frequently stop during the day and at unexpected times at places other than the floors. The question was then qualified by limiting the time to the year 1910. To this question the court sustained an objection. Afterwards the question was re-asked, and the time fixed during the month of September, 1910. Witness replied that he could not confine himself to the exact dates, stating that he could only say what was the condition of the elevator and what the custom had been since it was put in. He then remarked that when the elevators were first put in the electricity was in the building. Afterwards the machinery was taken out and the current was brought from the outside. After that the current would occasionally give out or be shut off, and the elevator would get hung between the floors occasionally. He remembers a dozen instances of this kind. This was about the year 1910, but he could not remember the exact month. The same defect was there until he moved out. The elevators were regularly inspected. The only defect that he ever knew of was when the current was shut off. Then it would stop between floors.

According to the evidence for the defendants, neither one of the women was hurt or claimed to be hurt when rescued from the elevator. They both laughed about it. There was no defect in the elevator. The accident occured because the current was turned off.

Briefly stated, the plaintiff's petition bases her right of recovery on the following facts: She was employed as a cleaner in the building. Mrs. Weston was the forelady. The elevator was in a dangerous and defective condition, which was known to the defendants, their agents and employes superior in authority to plaintiff, or could have been known to them by the exercise of ordinary care. Plaintiff did not know of such condition. The elevator was used by employes in going from one floor to another. It was operated by Mrs. Margaret Weston. By reason of its dangerous and defective condition, the elevator stopped between the first and second floor, and could not be moved. On the occasion of the accident she was ordered to go on the elevator. The elevator stopped and it was necessary for plaintiff to

be taken out through a small place. In being so removed, she was greatly injured in her arms, hips, side, back and limbs.

(1) It is first insisted that the trial court submitted the case to the jury on an issue not made by the pleadings. In this connection our attention is called to the fact that plaintiff's petition bases her right of recovery on the dangerous and defective condition of the elevator, which was known to defendants and unknown to plaintiff, whereas the instructions of the court authorized a recovery for a dangerous and defective condition of the elevator, of which defendants had been notified in time to repair same, and had failed to do so, "telling the plaintiff that there was no danger in the use of said elevator in its then condition, and directing her to continue the use thereof, and that plaintiff had relied upon said assurance." We do not regard the latter clause as prejudcial under the facts of this case. It was the duty of the defendants to exercise the highest degree of care and skill usually exercised by prudent persons in the same business in the management and operation of the elevator in which plaintiff was riding at the time she was injured. Ky. Hotel Co. v. Camp, 97 Ky., 426. As the plaintiff was present and entered the elevator at the direction of the forelady, and as there was nothing in its appearance to indicate that it was dangerous, the mere fact that she had known the elevator to stop once on a previous occasion was not sufficient to prevent a recovery. Therefore, if the elevator was in a dangerous and defective condition, and defendants had been notified of its condition in time to have repaired same, plaintiff could recover under the facts of this case as she was acting under the immediate direction of the foreman. The court not only required the jury to believe these facts, but also the fact that plaintiff had been assured that the elevator was not dangerous, and that she had relied on the assurance. As a belief in these facts was not essential to a recovery, the fact that they were submitted to the jury affords no ground for a reversal.

(2) Instruction No. 1 is further attacked on the ground that it lacks brevity and conciseness, and is more like a charge of a Federal court, in that it calls to the attention of the jury every fact testified to by the plaintiff, many of which were not controverted by the defendants. While the instruction might have been more concise, defendant can not complain of the fact that the

jury were required to believe more than was necessary for them to believe in order to find for plaintiff, or that they were required to pass on admitted facts.

(3) By instruction No. 3, the court told the jury that the motive power by which said elevator was operated constituted a part of said elevator, and might be so considered in determining the condition of the elevator at the time of the injury. This instruction is attacked on the ground that it gives undue prominence to certain facts. Inasmuch, however, as the motive power is essential to the proper operation of an elevator, the court, in our opinion, did not err in giving the instruction referred to, for without such an instruction the jury might have thought that the defendants were under no duty to see that the motive power was in proper condition, if as a matter of fact it was furnished by some one else.

(4) It is next insisted that the court erred in permitting witness Bailey to testify to the fact that the elevator had stopped on several occasions, inasmuch as those occasions were too remote from the time of the injury. A careful reading of Bailey's evidence will show that he fixed these occasions about the year 1910, but could not remember the exact month. In our opinion, the time was not so remote as to make this evidence inadmissible. The purpose of the evidence was to show knowledge on the part of the defendants. The fact that during the same year the elevator had stopped a number of times because the current had failed to work is sufficient to show that the defendants, in the exercise of proper care, could have ascertained this fact and taken steps to remedy the condition.

Judgment affirmed.