## Home Lumber Co. v. Turley.

April 19, 1940.

W. B. Ardery, Judge.

634

Jouett & Metcalf, J. Ashlin Logan, Charles W. Metcalf and George Batterton for appellant.

W. B. White and Bradley & Blanton for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Alleging that the appellant, his employer, had negligently failed to furnish him with a safe truck to drive in the discharge of his duties as truck driver, the appellee instituted this action to recover damages for personal injuries sustained on March 21, 1938, as the result of the locking of the steering gear of the truck while rounding a curve. The appellee further alleged that the appellant had undertaken the duty of keeping the truck in repair but had permitted parts of the steering apparatus to become so worn as to render its operation unsafe, and that the unsafe condition of the truck thus arising was not known to the appellee or discoverable by the exercise of ordinary care. Various defenses were interposed, including pleas of contributory negligence and assumption of risk. It is also disclosed by the pleadings that the appellant was operating under the provisions of the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., but that appellee had not elected to operate under it. The trial resulted in a verdict for the plaintiff in the sum of $1,898, and from the judgment entered thereon, this appeal is prosecuted. Numerous grounds for reversal are urged,

including the admission of incompetent testimony and the allegedly erroneous instructions given by the Court, and we have been supplied with able briefs elaborating upon the respective duties of master and servant, but, as in all cases where the employee seeks to recover damages of the employer for personal injuries sustained by the former in the course of his employment, the primary inquiry must be directed toward the ascertainment of whether the employer was guilty of a breach of duty which he owed the employee, since, in the absence of negligence on the part of the employer, no liability for such injuries can be imposed, no matter how free from fault the employee may have been, or how onerous to him the consequences. Since in the present case it was not shown that the defective or worn condition of the steering apparatus in question was known either to the appellant or to the appellee, or that it was visible or discoverable except by an inspection, or that the appellee was under any duty to make such an inspection, the primary question above referred to narrows itself into: What duty of inspection rested upon appellant?

Prior to his employment by appellant in the early part of February, 1938, the appellee had driven automobiles and trucks but had had no employment as a truck driver. He was possessed of a good education, having spent three years as a student at the Virginia Polytechnic Institute, and while he speaks of the truck as an old worn out truck, he quite frankly admits that the only trouble he had ever had with it was caused by the engine missing, and that when he reported this fact to his employer, he had been instructed to take the car to a garage and have it checked. With equal frankness he admitted that while the steering gear of the truck was a little loose and had some play in it, this condition had occasioned no trouble and he had made no complaint or report of it to the appellant. In addition to this, the testimony shows beyond dispute that in February, 1937, the appellant had had the truck in question thoroughly overhauled at a reputable garage at an expense to it of approximately $147, and that the appellee had been instructed by appellant to take the truck to a garage about once a month for a check-up and inspection. On February 19th, the monthly check-up had been made by the Hunt-Wilkinson Garage at Mt. Sterling, where the truck had remained from Saturday afternoon until Monday

morning. The appellant states that he was supposed to have taken the car in for its monthly inspection on Saturday, March 19th, two days before the accident, which occurred on March 21st, and that appellant's superintendent had told him to "wait until next week," but it is not shown that appellee objected or did anything to apprise appellant that the steering apparatus was defective or needed attention.

Appellee introduced several witnesses who testified that after the truck had been dismantled following the accident, the steering gear was found to be unbroken but loose and badly worn. It is apparent from the testimony that although the exact condition of the steering apparatus could not have been discovered except by dismantling it the fact that it was loose and worn could have been discovered by manipulating it. While appellee attempted to show by two of appellant's former employees that during the summer of 1937 the steering wheel of one of appellant's trucks which they were operating had locked, it was not shown that this truck was the one which appellee was driving at the time he was injured. On the contrary, it affirmatively appears that it was another and different truck. Without further reciting the testimony, it is sufficient to say that it nowhere appears that appellant at any time prior to the accident in which appellee was injured, had any notice whatsoever that the steering apparatus of the truck in question was unsafe or defective, and therefore, as above stated, the fundamental question to be determined in this case is whether the appellant was derelict in its duty of inspection.

It is true that the truck was a 1931 model, and that there is testimony in the record that the life of a truck, without renewal of its parts, is approximately four years. On the other hand it is not disputed that appellee had had the truck overhauled in February, 1937, and that it was successfully operated by the appellee during some six or more weeks prior to the accident. Moreover, two witnesses stated that after the accident in which appellee was injured, the truck, under its own power, was driven several miles to a garage without those in charge of it observing anything wrong with the steering apparatus. It is seriously argued by appellant that the accident was not caused by a defective

steering apparatus but by appellee driving the truck at an excessive rate of speed around a curve. But, disregarding the testimony introduced by the appellant, we are again confronted with the questions: In what particular or particulars was the appellant derelict in its duty of inspection? In the absence of notice that some part of the truck was defective, was it appellant's duty to have the truck inspected at a reputable garage oftener than once a month? Was it under the duty to have the truck again overhauled in the absence of any expert advice that such overhauling was necessary? Was it not entitled to assume that if an unsafe or dangerous condition developed in the truck, some symptom of that condition would manifest itself to its operator, who, in turn, would report it? Or that, if no such symptom manifested itself, the defect would be discoverable and reported by the garage to which it was sent monthly for inspection? In the absence of such a report from the appellee or the garage, was it incumbent upon the appellant to either dismantle the truck in a search for hidden defects or discontinue its use? We are compelled to answer these questions in the negative, and thus it follows that the Trial Court should have sustained appellant's motion for a directed verdict.

We rest our decision in this case, not upon the theory that appellee is precluded from recovery because he had means equal to those of his employer of discovering the defect in the steering apparatus which he claims caused his injury, but upon the fact that the record fails to show any negligence on the part of the appellant. Its duty was to use ordinary care to furnish appellee with reasonably safe appliances with which to do his work, and this duty was fully discharged when it had the truck thoroughly overhauled in 1937, and, in the absence of actual notice of defect, directed appellee to take it to a reputable garage at least once each month for an inspection. To require of appellant a higher degree of care would be to impose upon it the obligation of an insurer against injury resulting from hidden defects.

Judgment reversed for proceedings consistent with this opinion.