## Happy-Scuddy Coal Co. v. Combs.

April 22, 1949.

Craft & Stanfill for appellant.

C. C. Wells for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The plaintiff, Barnett Combs, suffered a severe strain in his back while employed by the appellant, Happy-Scuddy Coal Company, and recovered a judgment for $2,500.

The primary question is whether or not there was a failure of the employer to furnish its employee a safe

place in which to work or reasonably safe tools and such was the proximate cause of the injury. Neither contributory negligence nor assumed risk is involved since the defendant had not accepted the provisions of the Workman's Compensation Law, KRS 342.001 et seq., although eligible to do so.

The situation is not very clear to us. We understand it to have been that coal and slate were carried down an inclined track in small cars, called monitors, controlled by a cable. The plaintiff's proof is: All of these cars had worn-out or no bearings and were ''wobbly,'' and the track was in a very bad condition. The cars very frequently jumped the track. These conditions were known to the company's foreman to whom the plaintiff had made objection or criticism. He was working with these cars. The one he was handling when hurt was loaded with slate and was ''wobbling.'' It came down the incline to the bin, or place of dumping, and when within two or three feet of the point, the front wheels jumped the track. Said he, ''The wheels pitched off and caught me in there. I had the front end lifted up and the back wheels jumped off and threw the weight on me. I had to hold it.'' His back gave way under the weight. After holding on momentarily to keep from falling into the slate dump, he fell across the track. He testified that it was his job to get the car back on the track and he was doing it in the only way that he could without a jack, and none had been furnished him. He could not use the hoist rope because ''we had a stock up around the mountain and this car was wrecked in front of it.'' No foreman had told him not to lift the cars when they got off the track, and it was his duty or job to do so. And he was performing that duty when the accident happened. He testified, ''They told us to get the cars back on the track, and they taken it (a tram motor) from us and said that was what we was hired for.'' Two brothers of the plaintiff were working nearby, but he did not call them or anyone else to help because ''there was no room except for one man in front to get this car back on.'' There was a jack on the premises, but it was ''kept inside and there was none around the head house.'' The plaintiff's brother testified that there was no jack around the head house where the plaintiff was working and that neither a motor nor a hoist was avail-

able for the plaintiff's use at the time he was injured. The witness testified, ''We used to have an old motor and we used that. The motor was off the hill and we had 50 or 60 cars behind and that motor couldn't be used.''

The defendant's proof is that the cars and track were not defective, and the whole system was in a ''reasonable operating condition''; that the plaintiff had that very morning been told by the superintendent that he would get hurt lifting a car back on the track by himself and was warned not to do so; that he had two other men to help him. This was denied by the plaintiff. Three men could replace a loaded car with safety. The company had furnished jacks, motors, and prize poles for use in putting the cars back on the track. The brother of the plaintiff who testified gave a statement several weeks after the accident. The part material here is that the plaintiff had been warned that morning by the superintendent not to try to put another wrecked car on by himself.

The point upon which appellant's claim for a peremptory instruction rests is that, if the car and track were unsafe to the extent that the defendant should be deemed negligent, the plaintiff's injury proximately resulted from his independent act in trying to replace the derailed car on the track. Stated more concretely: if the car had jumped the track and fallen on the plaintiff, then the defect could be considered as the proximate cause, but that was not the case; the plaintiff was injured in lifting the car which act was not a part of his duty but was done in disobedience of orders. We do not accept the premise. The car and track were instrumentalities the plaintiff was working with. His evidence, we think, is sufficient to afford a reasonable belief that when the front wheels of the car were derailed, due to a defective condition, he was caught at a point where he would have fallen into the slate bin but for holding on, and then while lifting the front wheels the back end of the car came off, also due to the bad conditions, and it was this that ''threw the weight'' on him. He had not been furnished with suitable or any mechanical equipment to use in doing what he stated was his job to do, namely, put the car back on the track. It may well be said that this was the efficient cause which set in motion the chain

of circumstances leading to the injury and that the accident and injury should have been anticipated as a natural and probable consequence. It need not have been the sole cause, for a concurrent proximate cause is sufficient to impose liability, mere contributory negligence on the employee's part not being a factor. This was a question for the jury. Kelly & Shields v. Miller, 236 Ky. 698, 33 S.W.2d 662; Southern Mining Co. v. Saylor, 264 Ky. 655, 95 S.W.2d 236; Harlan Ridgeway Mining Co. v. Jackson, 278 Ky. 767, 129 S.W.2d 585; Cloversplint Coal Co. v. Blair, 287 Ky. 158, 151 S.W.2d 1052; Ward v. Marshall, 293 Ky. 18, 168 S.W.2d 348; Burk Hollow Coal Co. v. Bills, 300 Ky. 735, 190 S.W.2d 338.

We think the evidence was relevant and admissible that the defendant's track and cars being used in this operation were in a general bad and defective condition and had been for some time prior to the accident and that the plaintiff was not confined to showing the condition of the particular car at the particular time and place. There was never any change in the condition of the appliances or premises during the period covered by the evidence. This tended to establish knowledge on the part of the defendant and prove that it was not exercising its legal duty to its employee. Andricus' Adm'r v. Pineville Coal Co., 121 Ky. 724, 90 S.W. 233, 28 Ky. Law Rep. 704; Coleman v. Freeman, 160 Ky. 57, 169 S.W. 523; 35 Am. Jur., Master and Servant, sec 507; 57 C.J.S., Master and Servant, sec. 509.

The primary instruction is prejudicially erroneous. It authorized a recovery against the defendant if it had negligently permitted its track and cars to become defective and in an unsafe condition—not unreasonably so. It omitted the element of knowledge of such a condition on the part of the defendant. An employer's obligation to its employee is not the frequently impossible duty of furnishing absolutely safe instrumentalities or place to work. Its duty is to provide its employee with a place reasonably safe having regard for the character of work and reasonably safe tools and appliances for doing the work. The measure of duty is to exercise ordinary or reasonable care to do so. The standard is the care exercised by prudent employers in similar circumstances.

And notice or knowledge on the part of the employer is an element of ordinary care. Gibraltar Coal Mining Co. v. Miller, 233 Ky. 129, 25 S.W.2d 38; Southern Mining Co. v. Saylor, 264 Ky. 655, 95 S.W.2d 236; Perkins-Harlan Coal Co. v. Creech's Adm'r, 268 Ky. 174, 103 S.W.2d 943; Home Lumber Co. v. Turley, 282 Ky. 633, 139 S.W.2d 435. The instruction should have been patterned after that prepared in Croley v. Huddleston, 301 Ky. 580, 192 S.W.2d 717. See also Stanley on Instructions to Jury, secs 510, 511 and 514, which, however, contain references to the factor of contributory negligence which, as we have already said, has no place in a case where that is not available as a defense.

The plaintiff's doctor testified an X-ray revealed some arthritic condition, quite common to all men. But there was no evidence that it had ever impaired the plaintiff's ability to work or caused him pain and suffering. Since there may be another trial, we may express the opinion that instruction No. 3 was not authorized. It was to the effect that, if the jury believed the plaintiff's injuries resulted from some cause other than negigence of the defendant, he could not recover. Nor did the evidence authorize the instruction offered by the defendant on diminution in the plaintiff's earning power or aggravation of disability by disease.

The judgment is reversed.