RENDERED:  AUGUST 22, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1114-MR

MITCHELL BAIRD                                               APPELLANT


                 APPEAL FROM UNION CIRCUIT COURT
v.                 HONORABLE DANIEL M. HEADY, JUDGE
                 ACTION NO. 21-CI-00140


GREENWELL BROTHERS FARM
LLC; JAMES NEAL GREENWELL;
AND THOMAS RANDALL
GREENWELL                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, A. JONES, AND KAREM, JUDGES.

COMBS, JUDGE:  Mitchell Baird appeals from a judgment of the Union Circuit Court entered on January 9, 2024, in favor of his employer, Greenwell Brothers Farm, a general partnership engaged solely in agriculture and operated by brothers Thomas Randall Greenwell and James Neal Greenwell.  Baird's tort action against his employer was not barred under Kentucky's workers' compensation scheme

because the farm is not an employer required to comply with its provisions. KRS[1] 342.630(1); *see also Brownwood Property, LLC v. Thornton*, 621 S.W.3d 434, 439 (Ky. 2021); *Homestead Family Farm v. Perry*, 506 S.W.3d 325, 326 (Ky. App. 2016); *Fitzpatrick v. Crestfield Farm, Inc.*, 582 S.W.2d 44, 45 (Ky. App. 1978). Following a lengthy trial, a jury found that the farm was not liable for injuries that Baird allegedly sustained during the course of his employment. After our review, we affirm the judgment entered in accordance with the jury's verdict.

Baird grew up farming in Union County. In late 2017, he began working as a farmhand for Greenwell Brothers Farm. The Greenwells had been farming for generations. They operated a grain bin system in conjunction with raising crops.

In August 2020, before the annual harvest of corn, the Greenwells decided to replace the perforated flooring of an empty grain bin located at their grain complex. The perforated floor of a grain bin is suspended above a sub-floor -- a concrete slab -- and allows the air inside the bin to circulate through the grain stored there. The grain stored in bins operated by the Greenwells is dried before being loaded into the bin and remains there, undisturbed, until it is transported to a grain elevator at any time before the next harvest.

---

[1] Kentucky Revised Statutes.

Replacing the floor of the empty bin meant disassembling and removing the existing floor along with any accumulated grain fragments. A group of about eight people worked on the project, including Randall Greenwell and his adult sons. Randall Greenwell testified that Baird had been on vacation -- but that he "maybe did get in on the tail end" of the floor removal. Otherwise, Baird worked "for a couple, couple hours, maybe" as he stood outside the bin, carrying buckets of grain fragments handed to him from someone working on the inside. While removal of the flooring took days, removal of all the grain fragments took only a matter of hours.

Randall testified that he worked on the flooring project for "the entire duration." He reported that removal of the grain fragments did not cause dust to fly, but he identified "bee's wings," the coarse, nearly transparent membrane that attaches corn kernels to the cob, which, can be seen "on every farm around, grain dryers, swirling around like a little tornado." Randall testified that the bin was completely sealed so that nothing -- water, rodents, wind -- could get inside until such time as they removed side panels to get inside and access the floor.

At trial, Baird testified that he was familiar with the work required as he had cleaned out the subfloor of grain bins at his own farm on several occasions. Baird indicated that the majority of his work was performed outside the grain bin while Randall Greenwell, Randall's sons, and others worked inside removing the

flooring. Once flooring was removed, Randall, his sons, and other employees shoveled grain fragments into a bucket and handed it outside to Baird who emptied it into a wagon. While Baird was aware that protective facemasks were available, he testified that no one working on the project wore one.

After the project was completed, Baird became ill with an infection known as Blastomycosis, a fungal infection common in the region. Blastomycosis is caused either by inhaling airborne spores of the fungus Blastomyces or by direct inoculation of the skin. Blastomyces spores are endemic to Union County. They thrive in soil rich with decaying organic matter and can become airborne when soil is disturbed. No one else working at the grain bin became ill.

In August 2021, Baird and his wife, Debra, filed a negligence action against: the Greenwell brothers; Greenwell Brothers Farm, LLC; RNG Farms, LLC; and Neal Greenwell Farmland, LLC. They alleged that Baird's illness was a direct result of the work that he performed at the grain bin. They alleged that Greenwell Brothers Farm was responsible because: it failed to keep him safe from a recognized hazard that was likely to cause death or serious physical harm; failed to provide him with a safe work environment; and failed to take reasonable care for his safety by providing him with personal protective equipment. The Greenwells answered and denied the Bairds' allegations. Debra Baird's claims were dismissed

in December 2023.  The claims against RNG Farms, LLC, and Neal Greenwell Farmland, LLC, were also dismissed.

After a period of discovery, a jury trial began on December 18, 2023. Baird presented evidence tending to indicate:  that the Greenwells never required, encouraged, or offered respirators or facemasks to be worn while work was being done at the grain bin; that they failed to have written safety protocols in place; and that they failed to provide him with a safe work environment.  Some of Baird's witnesses explained that his work on the grain bin was the cause of his illness and that he suffered significant monetary damages as a result of his injury.  However, Baird admitted that despite working in and around grain bins for many years, he had never heard of the dangerous airborne spores nor was he ever aware of their presence around him.  He admitted that there was nothing to suggest that the Greenwells should have known that working in or around the grain bin posed a significant danger.

The Greenwells presented evidence indicating:  that even Baird's own infectious disease expert could not connect his injuries to work at the grain bin project given the prevalence of Blastomyces in the region; that respirators and facemasks were made available (at several locations) to all farm employees and family members to use at their election and discretion; that Baird had worn facemasks before while working for Greenwell Brothers Farm; and that Baird

chose not to wear a facemask on this occasion because it was hot. Additionally, the defense produced evidence tending to indicate that good agricultural practice requires that respirators be made available for voluntary use and that the respirators provided at the farm in August 2020 were sufficient to meet any perceived inhalation risk. Evidence was introduced to confirm that Baird had likely been exposed to Blastomyces spores at farmland not owned or used by the Greenwells based on photographs showing him lying or resting on the ground near plowed fields. Finally, evidence showed that Baird's illness could not be linked to the inhalation of grain dust.

After presentation of the evidence, the trial court instructed the jury, in relevant part, that Baird bore the burden to "prove that he developed blastomycosis as a direct result of GREENWELL BROTHER[S] FARMS [*sic*] failure to provide [him] a reasonably safe place to work on or about August 17, 2020." Following closing arguments, the jury retired to deliberate. It found that the farm was not responsible for Baird's injuries. It returned a special verdict form indicating that no jury member was persuaded that Greenwell Brothers Farm breached its duty "to prevent foreseeable injury to [Baird] by exercising ordinary care in furnishing a reasonably safe place to work on or about August 17, 2020, having due regard for the character of the work and by providing . . . reasonably

safe tools and appliances required for doing such work." Judgment was entered accordingly; Baird's post-trial motions were denied; and this appeal followed.

Baird raises numerous issues on appeal. They can be divided into categories related to the court's instructions to the jury; its decision to exclude testimony related to statutory provisions governing health and safety in the workplace and our workers' compensation system; and, finally, its decision to admit the testimony of some of the farm's experts. We address the arguments in the order in which they were presented.

With respect to his contentions concerning the jury's instructions, Baird first argues that the court erred by failing to identify him as a business invitee in a premises liability instruction. We disagree.

A negligence action requires proof of duty to another, a breach of that duty, and a consequent injury. *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680, 686 (Ky. App. 2009) (citing *Illinois Central Railroad v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967); *Mullins v. Commonwealth Life Insurance Company*, 839 S.W.2d 245, 247 (Ky. 1992)). While the existence of a duty is a question of law for the court, breach and injury are questions of fact for the jury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003).

In support of his argument, Baird relies upon the common law duty that landowners owe to their invitees to discover unreasonably dangerous

conditions on the land -- and either to correct them or to warn of them. The nature and scope of an employer's duty to its employee is similarly defined: an employer is under a duty to furnish an employee a reasonably safe place to work. *Stinnett v. Buchele*, 598 S.W.2d 469, 472 (Ky. App. 1980). An employer is not an insurer of its employee's safety. *Id.* Moreover, we have held that the liability of an employer ends where an "employee['s] means of knowledge of the dangers to be incurred is equal to that of the employer." *Id.* (citing 53 Am.Jur.2d *Master and Servant* §160).

In this case, the trial court carefully instructed the jury in accordance with principles we expressed in *Stinnett*, *supra*. Citing *Happy-Scuddy Coal Co. v. Combs*, 310 Ky. 52, 56, 219 S.W.2d 968, 970 (1949), we held that an employer had the obligation to furnish its employee:

> a place reasonably safe having regard for the character of work and reasonably safe tools and appliances for doing the work. The measure of duty is to exercise ordinary or reasonable care to do so. The standard is the care exercised by prudent employers in similar circumstances.

598 S.W.2d at 471.

The trial court's instruction accurately stated the law. It was consistent with the "ordinary care" duty outlined in *Stinnett* and was based on the theory of liability presented at trial -- that the farm failed to provide adequate protective equipment and a safe work environment. The trial court did not err by

declining to give a second instruction based on the same underlying conduct but couched specifically in terms of a landowner's obligation to invitees.

Next, Baird contends that the trial court erred by failing to instruct the jury that if he were found negligent, his negligence would be attributed entirely to the farm. Baird argues that he is entitled to a new trial because the court erred by providing the jury with an instruction that permitted it to weigh the relative negligence of the parties. The trial court did not err by instructing the jury that Baird had a duty to exercise ordinary care for his own safety while working in or around the grain bin. No one is ever absolved of the duty to take care for one's own safety and to avoid injury. *Rogers v. Professional Golfers Ass'n of America*, 28 S.W.3d 869, 872 (Ky. App. 2000).

Nor did the court err by permitting the jury to apportion a percentage of fault to Baird if it were to find that even if the Greenwells had breached their duty to provide him with a safe working environment, Baird also failed to exercise care for himself by electing not to wear or use a safety mask. Comparative negligence principles require liability in proportion to fault. *Regenstreif v. Phelps*, 142 S.W.3d 1, 4 (Ky. 2004). A finding of fault involves an examination of the duties of each party and a determination of whether those duties were breached. Moreover, the jury never reached the disputed instruction because it found

unanimously that the Greenwells met their duty of care with respect to Baird's safety. Baird is not entitled to a new trial on this basis.

Next, Baird argues that the trial court erred by instructing the jury that the plaintiff bears the burden to prove the elements of his claim in a civil action. Baird claims that he was prejudiced by the court's instruction indicating that he "must prove that he developed blastomycosis as a direct result of [the farm's] failure to provide [him] a reasonably safe place to work on or about August 17, 2020." Again, we disagree.

Kentucky Rules of Civil Procedure (CR) 51(2) and (3) provide as follows:

> (2) After considering any tendered instructions . . . the court shall show the parties the written instructions it will give the jury, allowing them an opportunity to make objections out of the hearing of the jury. . . .
>
> (3) No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, **stating specifically** the matter to which he objects and the **ground or grounds** of his objection.

(Emphases added.) "The underlying purpose of CR 51(3) is to 'obtain the best possible trial at the trial court level' by 'giv[ing] the trial judge an opportunity to correct any errors before instructing the jury.'" *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 162 (Ky. 2004) (citations and footnotes omitted).

-10-

When presented with this argument post-trial, the trial court noted that Baird had never objected to the use of the phrase "must prove" in the instruction. We agree with the Greenwells' contention that Baird waived his right to challenge the disputed instruction. Because this claim was not presented to the trial court for its consideration, we are without authority to review it on appeal. *Regional Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989) (citations omitted). Nevertheless, if we were to address the issue, we would not conclude that the instruction went beyond the "bare bones" in guiding the jury's deliberations or that it unfairly heightened Baird's burden of proof -- especially where the evidence indicated that Baird's illness could have been caused by a number of sources outside the farm's grain bin project.

Baird's infectious disease expert testified that Blastomyces spores can be found **anywhere** -- particularly in soil. The Greenwells' expert, Dr. Armitage, an internal medicine and infectious disease physician, confirmed that Blastomyces spores can be found in organic matter, such as tree roots, decaying leaves, and animal droppings. He observed that the spores are endemic to Union County. He indicated that the spores are more commonly found in environments where soil has been turned. And, with respect to photographs of Baird resting on the ground next to a freshly plowed field, Dr. Armitage noted that Blastomyces spores could have entered the body through the open sores on Baird's arms.

-11-

There was no dispute that Baird lived on an active crop farm in August 2020. The jury was shown an aerial view of his home, which is located beside two grain bins and a cornfield. Under these circumstances in particular, the court did not err by instructing the jury that Baird bore the burden of linking his illness to the Greenwells' grain bin project. The instruction correctly explained Baird's burden of proof under the unique circumstances established by the evidence. Baird's argument to the contrary is without merit.

Baird next argues that the trial court erred by including in the special verdict form an instruction indicating that the farm had a duty to prevent "foreseeable injury." He contends that the instruction is erroneous because the concept of foreseeability is already incorporated into the duty analysis. Where "statements of law contained in the instructions are substantially correct, they will not be condemned as prejudicial unless they are calculated to mislead the jury." *Mendez v. Univ. of Kentucky Bd. of Trustees*, 357 S.W.3d 534, 539 (Ky. App. 2011). During his closing argument, Baird explained to the jury why it had been instructed as it had and carefully defined how to apply the term "foreseeable injury" to determine the facts. The challenged instruction did not mislead the jury. There was no prejudice, and thus there was no error.

Baird also argues that the special verdict form erroneously omitted "on or about" language in one section of the instruction. On the contrary, however,

the instructions provided to the jury specifically contained the court's hand-written addition, "on or about." Moreover, the phrase "on or about August 17, 2020," was used consistently throughout the instructions. There was no error.

Last, with respect to the special verdict form, Baird states that the trial court erred by failing to give an "eggshell plaintiff" instruction; *i.e.*, the theory in tort law that a particularly fragile party is nonetheless protected from actionable negligence. Baird does not elaborate upon that principle except to say that "[d]efendants take plaintiffs as they come" and to explain in a few words that the trial court should have instructed the jury as he proposed. These remarks are insufficient to explain his argument. It is not our role to search the record or to supplement an appellant's underdeveloped argument. *Prescott v. Commonwealth*, 572 S.W.3d 913, 919 (Ky. App. 2019).

Finally, with respect to the jury instructions, Baird argues that he is entitled to a new trial because the trial court omitted a negligence *per se* instruction. Baird bases this contention on related arguments concerning the trial court's decision to exclude reference to workplace health and safety standards established by federal and state statutory provisions. Consequently, we shall consider these arguments together.

Baird observes that state and federal workplace health and safety standards generally require that employers provide a workplace free from

recognized hazards that are likely to cause death or serious physical harm to employees. He argues that the Greenwell brothers violated specific requirements by failing to provide: appropriate respiratory protection and by failing to implement established safety guidelines; hazard identification protocols; and employee safety training. Consequently, Baird contends that the trial court erred by excluding a negligence *per se* instruction.

The trial court determined that the Greenwell brothers' farming operation was exempt from workplace health and safety standards established by the federal Occupational Safety and Health Act (OSHA) and Kentucky's Occupational Safety and Health Act (KOSHA). However, it allowed Baird to present expert testimony tending to indicate that Greenwell Brothers Farm breached "general safety standards in agricultural operations." That testimony was presented by Dr. Boyd. While the health and safety standards she described clearly derived from OSHA and KOSHA provisions, the court permitted the testimony. However, it determined that identifying the specific statutory provisions rather than referring to them generally would confuse the jury and be unfairly prejudicial to the defendants. By declining to allow reference to statutory workplace health and safety requirements, the court clearly intended to avoid redefining the farm's common law standard of care.

The trial court did not err by concluding that the Greenwell brothers' farming operation is insulated from the state and federal workplace health and safety provisions that Baird claims were breached. However, even if it were subject to statutory workplace health and safety standards, and even if those standards were violated, neither the provisions of OSHA nor KOSHA could be used to expand or in any way affect the farm's common law duties or liability for its employee's workplace injuries. Both Congress and our General Assembly have enacted specific statutory provisions aimed at prohibiting the use of workplace health and safety standards to alter an employer's standard of care. 29 U.S.C.[2] § 653(b)(4) ("Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."); KRS 338.021(3) (state analogue).

Instructing the jury to consider negligence *per se* clearly requires it to consider expanding the farm's standard of care, a result that would directly contravene the provisions of OSHA and KOSHA. *See Hargis v. Baize*, 168 S.W.3d 36, 45 (Ky. 2005) (court holding that KRS 446.070 providing for a private

---

[2] United States Code.

right of action for violations of Kentucky's statutory provisions, "converts the standard of care required by the violated statute into a statutory standard of care for the negligence claim, the violation of which is negligence per se."); *Stinnett*, 598 S.W.2d at 471 ("Courts have uniformly stated that a violation of a regulation promulgated under the federal act [OSHA] does not give rise to an independent tort action by the employee against his employer."). Consequently, the trial court did not err by declining Baird's request to give such an instruction.

Baird also contends that the trial court erred by excluding any reference to our workers' compensation provisions. He argues that "workers' compensation is highly relevant and probative" because without explaining to the jury that coverage is not required for farmworkers, the jury likely assumed that "[he] had already been compensated."

The Kentucky Rules of Evidence (KRE) provide that evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable[.]" KRE 401. Evidence to indicate that Baird had **not** received workers' compensation benefits does not tend to make more or less probable the existence of any fact related to the farm's breach of its duty, causation, or the extent of its liability for damages. There was no error.

Last, we consider Baird's contentions with respect to the trial court's decision to allow certain expert testimony. Baird argues that he is entitled to a new trial because the trial court erred by failing to exclude the testimony of Dr. Keith Armitage.

Baird contends that the trial court erred by allowing Armitage's testimony because he was "deprived of an opportunity to discover the grounds of Dr. Armitage's opinion in a timely manner." Despite the timely disclosure of Armitage's report, which included a discussion of the grounds for his expert opinion, Baird complains that it was only during a deposition that "**it was disclosed for the first time that the central basis behind Dr. Armitage's causation opinion hinged upon his opinion that the incubation period for blastomycosis, from exposure to clinical symptoms, is 3 weeks to 45-to-60 days**." (Emphasis original.)

In his report, Dr. Armitage addressed the opinion of Baird's expert, Dr. Tuteur. Dr. Tuteur opined that the incubation period between exposure and presentation of Blastomycosis symptoms is ten to ninety days. Dr. Armitage criticized this opinion as "large" and indicated that it was impossible to pinpoint the source of the Blastomyces to which Baird had been exposed. Thus, Baird was on notice in early September 2023 that Armitage disagreed with the incubation period proposed by Baird's expert, Dr. Tuteur.

When he was deposed on November 29, 2023, Armitage confirmed his belief that Tuteur's opinion was flawed. Armitage indicated that he disagreed with Tuteur's view of the incubation period, explaining, "[w]hat I've seen is three weeks, 45 days, 40 days, 30 days. I think 10 days is too short." Baird contends that Armitage's deposition testimony came as a surprise because "the actual grounds for his causation opinion was omitted" from his report of July 2023. Armitage was deposed a second time on December 14, 2023.

When we review a trial court's decision regarding the admissibility of evidence, we consider whether the court abused its broad discretion. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577-78 (Ky. 2000). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 581.

The Kentucky Rules of Civil Procedure require a party to identify: each expert he expects to call as a witness at trial; the substance of the facts and opinions to which the expert is expected to testify; and a summary of the grounds for each opinion. CR 26.02(4)(a)(i). Once an expert witness has been identified, any party may obtain further discovery of the expert witness by deposition. CR 26.02(4)(a)(ii). Depositions are universally recognized as the most effective, detailed method of obtaining an understanding of an opponent's proof. *Oliphant v. Ries*, 568 S.W.3d 336, 345 (Ky. 2019).

A party requesting that testimony be excluded must show prejudice. *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). There is no prejudice in this case where the record reflects there was complete pretrial disclosure concerning Dr. Armitage's opinions and calculations both in his initial September 2023 disclosures and in his depositions of November and December 2023 -- scheduled for dates meeting the request of Baird's counsel. Whatever shortcoming Baird identified in the written disclosure provided by the Greenwells, Armitage's depositions served the same function -- "to reveal evidence, information and opinions that may be used at trial." *Oliphant*, 568 S.W.3d at 345.

Our pretrial discovery rules are not designed to create procedural traps; instead, they are in place to ensure a fair trial. *Id.* Pretrial discovery simplifies and clarifies the issues in a case and eliminates or significantly reduces the element of surprise. *Id.* (citing *LaFleur v. Shoney's, Inc.*, 83 S.W.3d 474, 478 (Ky. 2002)). The Greenwells' expert disclosure was entirely proper and served the purpose underlying our pretrial discovery rules. Baird was not deprived of an opportunity to discover the basis for Dr. Armitage's expert opinion in a timely manner or to prepare for his trial testimony. Baird suffered no prejudice, and the trial court did not abuse its discretion by allowing the challenged testimony. There was no error.

Baird next contends that the trial court erred by allowing the testimony of Mr. McIntosh, an industrial hygienist, and Dr. Crystal, a vocational expert. Again, we do not agree.

With respect to McIntosh, Baird complains: that the Greenwells failed to disclose him on a timely basis; that the "initial disclosures were grossly insufficient[;]" and that the Greenwells never made him available for deposition. Last, Baird contends that the trial court erred by permitting him to testify regarding agricultural safety standards because he had "no expert knowledge, skill, experience, education, or training regarding agriculture safety the industry, or grain bins."

The Greenwells recount that the timing of the disclosure of McIntosh as an expert witness was entirely dependent upon Baird's disclosure of Boyd, his OSHA expert. Baird was directed by the court to make a complete disclosure outlining Dr. Boyd's expected testimony -- excluding reference to specific OSHA standards -- by October 20, 2023. While ultimately timely, the disclosure omitted reference to Boyd's anticipated opinions. Instead, Baird indicated that Boyd's report would be forthcoming.

In response, the Greenwells filed a supplemental disclosure on November 3, 2023. They indicated that McIntosh had been retained out of an abundance of caution in an effort to rebut Boyd's still undisclosed opinion with

regard to health and safety standards. Boyd's "non-OSHA related" opinions were finally disclosed at her deposition conducted in mid-December 2023. We agree that the timing and nature of the Greenwells' disclosure regarding McIntosh were entirely dependent upon Baird's actions. Under the circumstances, he cannot be heard to complain.

The Greenwells also indicate that Baird never asked to depose McIntosh, who would have been made available upon request, and Baird never raised any issue concerning McIntosh before trial. Baird does not dispute this representation, and so we decline to address the allegation further.

Baird contends that the trial court erred by permitting McIntosh to testify that an N95 respirator made available to him by the Greenwells would have been sufficient to filter particulates -- including dust and fungal spores. This testimony was offered to rebut Boyd's testimony concerning the nature of respirators made available by the Greenwells to Baird and other employees. In response to Baird's objection, the trial court noted that the litigation had become "a battle of the experts" and urged counsel to move things along. There was no reversible error.

With respect to Crystal, Baird contends that the Greenwells failed to comply with provisions of CR 26.02(4) because "little to no information was provided with respect to [him] prior to his trial testi[mony]." He also alleges that

the Greenwells had Crystal "suppress his report." The Greenwells dispute these representations vigorously.

The Greenwells' disclosure was timely and included the required information. While Crystal worked with counsel to prepare the necessary disclosures, he never prepared a report and did not share any of his personal notes with counsel. Baird never requested Crystal's file materials or that Crystal be made available for deposition. Under these circumstances, we do not agree that the trial court abused its discretion by permitting the expert testimony.

Finally, Baird contends that the trial court erred by allowing the testimony of Robert McIndoo, owner of Windimere Farms in Union County. We disagree.

The Kentucky Rules of Evidence permit a witness qualified as an expert by knowledge, skill, experience, training, or education to testify where his scientific, technical, or other specialized knowledge will assist the jury in understanding the evidence or determining a fact in issue. KRE 702. Baird does not contend: that the challenged opinion testimony was based upon insufficient facts; that the testimony was not based on reliable principles; or that the testimony failed to reflect a reliable application of the principles to the facts of the case in violation of the standards of KRE 702. Instead, he argues that McIndoo was unqualified to give expert testimony because he had no personal knowledge of the

facts surrounding Baird's exposure, and "by his own admission, no scientific or technical knowledge that could assist the jury." However, Baird is mistaken.

At the time of trial, McIndoo had worked in agriculture for more than forty years and was active in the day-to-day operations of his crop (corn and soybeans) farm. He was a member of the Kentucky Corn Growers Board; the local Farm Bureau Federation; and a member of a farmers' association that set policy for corn growers in Kentucky. He had regularly attended seminars conducted by Farm Bureau and the University of Kentucky Extension Office, including those focused on grain bin safety. Based on his education, training, and experience, he testified that there were no specific guidelines governing usage of face masks in farming operations in the region. He testified that accepted farming practices required farmers merely to make face masks available to employees for voluntary use.

In light of his knowledge, experience, and training, McIndoo could clearly provide opinion evidence of the custom and practice within the farming community which would assist the jury in determining whether the Greenwells breached the relevant standard of care. The trial court did not abuse its discretion by allowing the disputed testimony. There was no error.

We decline to discuss Baird's statement that the trial court abused its discretion by permitting Dr. Armitage "to testify about Baird's pulmonary condition, occupational issues, and his mental health condition[.]" Dr. Armitage

was indeed qualified to testify with respect to Baird's pulmonary condition as to medical issues that might intersect with the requirements of his occupation. Moreover, the testimony that he appears to challenge pertains to Baird's claimed damages. As this was not an issue reached by the jury, any alleged error is harmless.

We affirm the judgment of the Union Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANT:

M. Alexander Russell
Austin P. Vowels
Henderson, Kentucky

BRIEF FOR APPELLEE:

Melissa Thompson Richardson
Zachary T. Epperson
Lexington, Kentucky